Argued December 19, 1956, suspended for one year February 27, petition for rehearing denied March 27, 1957

COMPLAINT AS TO THE CONDUCT OF L. B. SANDBLAST

307 P. 2d 532

*Will H. Masters,* Portland, argued the cause for accused. On the brief were Masters & Masters, Portland.

*William M. Dale, Jr.,* Portland, argued the cause and filed a brief for the Oregon State Bar.

Before WARNER*, Chief Justice, ROSSMAN, BRAND and PERRY**, Justices.

* Chief Justice when cause argued.
** Chief Justice when this decision rendered.

PER CURIAM.

L. B. Sandblast, an attorney duly licensed to practice in the courts of the State of Oregon, was found guilty of professional misconduct by a duly constituted trial committee of the Oregon State Bar. The findings and conclusions of the trial committee were approved by the Board of Governors of the Oregon State Bar, who have recommended that the accused be permanently disbarred.

The complaint is based upon the actions of the accused arising out of the probate of the estate of George Petrow, deceased. The accused was retained by Frederick L. Petrow, son of the deceased and administrator of the estate, as attorney for the administrator.

The principal asset in the estate was the home of the deceased which was located at 1121 N. Larrabee Street, Portland, Oregon. The deceased was the owner of an undivided two-thirds interest in the real property, and his former wife, Nellie Petrow, was the owner of the remaining undivided one-third interest as the result of a 1937 divorce decree. At the time of the death of George Petrow, and for several years prior thereto, Nellie Petrow had been insane and was confined in the Oregon State Hospital at Salem.

Because of the meager assets in the estate, it became necessary to sell the real property, and for this purpose a guardian was appointed for Nellie Petrow. The accused prepared the petition and Vera J. Thompson, a public stenographer in the office of the accused, was duly appointed guardian. E. E. Pettingel, a member of the bar of this state, maintaining an office with the accused, appeared as attorney for the guardian. The guardian thereafter instituted a suit for partition

of the real property, the papers being prepared by the accused on behalf of E. E. Pettingel. A decree in partition was entered and W. L. Cooper, an elderly attorney maintaining an office with the accused, was appointed referee to effect the sale. On November 7, 1952, the real property was sold at public auction and one George H. McCulloch, in the employ of the accused, made the high bid of $3,050, of which $305, or ten per cent of the purchase price, was paid at the time of sale.

It appears that there may have been several bids made at the sale, but the only sizeable bids were made by the referee, W. L. Cooper, and by McCulloch. There is substantial evidence in the record that McCulloch and the accused had agreed to jointly purchase this property. It also appears that, while the accused prior to the sale asked the administrator whether or not he was interested in purchasing the property, he did not disclose to the administrator that he himself was directly or indirectly interested in the purchase of the property. It also appears from the record that the administrator probably would have consented to the purchase of the property by the accused had be been apprised of the fact. Further, it appears from the record that the property brought close to its true value.

On March 2, 1953, the accused paid McCulloch one-half of the $305 payment made by McCulloch at the time of the sale. Shortly thereafter the accused and McCulloch were in disagreement. McCulloch, having found a purchaser, proposed to make the sale of the property as his own without making a division of profits, if any, with the accused. Eventually, through the offices of a member of the state bar, a sale of the property was accomplished by McCulloch, and the

$152.50 paid by the accused to McCulloch was returned to him.

■ One of the charges of misconduct is that the accused purchased the property of the estate without the consent of the administrator in violation of Rule 8 of the Rules of Professional Conduct of the Oregon State Bar. Rules 8 provides:

> "A member of the state bar shall not directly or indirectly purchase property at a probate, foreclosure or judicial sale in an action or proceeding in which such member is an attorney for a party without the express consent of such party."

The evidence fully justified the trial committee in its finding that this rule was violated by the accused.

The accused was also charged with violation of Rule 7 of the Rules of Professional Conduct, which provides:

> "A member of the state bar shall not represent conflicting interests, except with the express consent of all parties concerned after a full disclosure of the facts, and then only when acting in the capacity of arbitrator. Within the meaning of this rule, a lawyer represents conflicting interests when, in behalf of one client, it is his duty to contend for that which his duty to another client requires him to oppose. The obligation to represent the client with undivided fidelity and not to divulge his secrets or confidences also forbids the member from subsequently and knowingly accepting or continuing in employment from others in matters adversely affecting any interest of the client with respect to which confidence has been imposed."

The accused argues that none of the clients suffered from his actions, and this appears to be true; also, there is no law upon our statutes that prevents an attorney from bidding in at a judicial sale the prop-

erty of a client. This result, and this argument, however, does not authorize violation of the rules of professional conduct.

The practice of law is a learned and honored profession; it deals with honest duties to the public that cannot be over-emphasized; it insists upon the highest standards of conduct from its members; it cannot permit the selfish interests of individual practitioners to rise above the interests of their clients, for to do so would result in subversion of justice.

In his eulogy of Mr. Justice Story, Mr. Webster said:

> "Justice, sir, is the greatest interest of man on earth. It is the ligament which holds civilized beings and civilized nations together. Wherever her temple stands, and so long as it is duly honored, there is a foundation for social security, general happiness, and the improvement and progress of our race."

■ The relationship existing between an attorney and his client is a sacred trust.

While it cannot be said with certainty that the accused, in drafting the guardianship papers and causing the appointment of close associates to act as guardian and as attorney for the guardian, was acting from corrupt motives, nevertheless, the record shows the interests of the guardian and the administrator were adverse as to a division of the proceeds from the sale of the property, and the actions of the accused in general are susceptible of a conclusion that his legal activities were clouded with a selfish interest.

■ Disbarment proceedings are brought not for purposes of punishment; they are brought for the purpose of expunging from the rolls practitioners unworthy of trust, or to ensure future conduct consistent with the

high ideals and obligations necessarily imposed upon those of the profession.

While no harm befell the clients from the actions of the accused, his actions were in violation of the canons of professional conduct so essential of observance by the legal practitioner. We cannot condone the actions of the accused, but believe that his suspension for a period of one year will bring to him a full realization of his duties as a practitioner at the bar of this state.

It is ordered that L. B. Sandblast be suspended from the practice of law in all the courts of this state for a period of one year.

Justice LUSK, feeling himself disqualified, did not participate.