Argued and submitted June 25, complaint dismissed July 23, 1980

In Re Complaint as to the Conduct of

BRICE L. SMITH,
*Accused.*

(OSB 78-14, SC 26815)

614 P2d 1136

Albert J. Bannon, Portland, argued the cause for the Accused. With him on the briefs was Black, Helterline, Beck & Rappleyea, Portland.

Warner E. Allen, Portland, argued the cause for the Oregon State Bar. On the brief was George O. Tamblyn, Portland.

PER CURIAM.

## PER CURIAM.

This is a disciplinary proceeding by the Oregon State Bar, charging the accused with (1) not adequately representing a client in the sale of property, (2) conduct involving a conflict of interest, and (3) selling property in violation of the terms of a restraining order.[1]

The Trial Board found the accused not guilty of the first two charges. It also found that he sold the property in violation of the restraining order, but had no knowledge of the existence of that order, and concluded that this mistake was "not of sufficient severity or magnitude to warrant any reprimand."

The Disciplinary Review Board, based upon its own findings of fact, found that the accused undertook to represent a client while he was still a partner of John R. Sidman; that although this partnership was dissolved on July 1, 1977, a de-facto partnership continued and that during this period there was a transmittal of information from the accused to Mr. Sidman and a sale of real property in which the client had an interest to Mr. Sidman. The Disciplinary Review Board concluded that under these facts there was an "appearance of impropriety" in violation of Canon 9 of the Code of Professional Responsibility and recommended a public reprimand. One member of the Board dissented by an opinion in which he agreed with the findings and recommendations of the Trial Board.

## THE FACTS

The accused and John Sidman were engaged in the practice of law as a partnership in 1976 and until at least June 1, 1977. During that time Mr. Sidman, on behalf of a client, Foster Auto Parts, had been trying, without success, to acquire an interest in lands adjacent to its property, referred to as the Slemp property.

---

[1] The complaint also included a "cumulative" or "catch-all" charge. We find it unnecessary to consider that charge.

During that same period of time Mrs. Carlotta Baker who, with her husband, owned a one-fourth interest in the Slemp property, came to the law office of Sidman and Smith and requested a conference with the accused with reference to a suit for the dissolution of her marriage then being handled by another attorney. Since the accused was out of the office, she was interviewed by Mr. Sidman. That meeting, however, did not result in an attorney-client relationship between Mrs. Baker and Mr. Sidman or the partnership.

Thereafter, aparently on May 23, 1977, Mrs. Baker again came to the partnership law office and consulted with the accused. Again, no attorney-client relationship was established because of the fact that she was then represented by another attorney. On June 15, 1977, that attorney resigned as attorney for Mrs. Baker and the accused then undertook to represent her.

Meanwhile, as of June 1, 1977, Mr. Sidman and the accused terminated their partnership, subject to winding up of assets and liabilities. Mrs. Baker was never shown on the books of the partnership as a client of the partnership. The answer by the accused to the complaint of the Oregon State Bar admitted, however, that the partnership was dissolved on July 1, 1977, the date found by the Disciplinary Review Board to be the date of its dissolution.

Mrs. Baker was in need of funds to support herself and her child. When the accused discovered that she had an interest in the Slemp property he informed Sidman that she was interested in selling her approximately 13% interest in that property. On July 7, 1977, Mr. Sidman wrote a letter to the accused, offering $17,500 for Mrs. Baker's interest in that property. By letter dated July 14, 1977, the accused informed her that she would be selling this property to Mr. Sidman, "an attorney who shares office space with me," and who represents Foster Auto Parts, owner of

the adjacent property, and that "you are selling this property to Mr. Sidman, knowing of his relationship with me and are satisfied that this is a reasonable price for the property." On July 15, 1977, such a contract of sale was signed.

It also appears that by letters July 5 and July 11, 1977, Mr. Sidman had made offers to other tenants in common, offering to purchase their interest in that property based on an evaluation higher than that which provided the basis for his offer to Mrs. Baker. The other tenants in common, however, did not accept those offers by Mr. Sidman and the accused denied any knowledge of such offers.

In addition, it appears that prior to the time when the accused undertook the representation of Mrs. Baker a restraining order had been entered in the suit for dissolution between her and her husband, restraining the sale of that property. The accused denied knoweldge of that restraining order, although a copy of it appeared in the file turned over to him by her former attorney. Later, however, the interest that Mrs. Baker had in that property was awarded to her husband in the suit for dissolution of that marriage. As a result, Mr. Sidman was unable to acquire her interest in that property on behalf of his client, Foster Auto Parts.

No complaint was made by Mrs. Baker against the accused. A complaint was made to the Oregon State Bar, however, against both the accused and Mr. Sidman by Mr. Larry S. Slemp, one of the original owners of that property.

1. *The alleged failure to adequately represent a client in the sale of property.*

The complaint of the Oregon State Bar alleges that the accused did not adequately represent Mrs. Baker in the sale of the real property in that he (a) failed to advise her that the purchaser of the property, a partner of the accused, had offered a higher price for

it to other co-tenants; (b) that he failed to advise her that she could possibly get a higher price from the other co-tenants, and (c) that he failed to contact other co-tenants with the offer or to attempt to negotiate a higher price for his client.

When the offer was made by Mr. Sidman to purchase the interest of Mrs. Baker in the property, the partnership had already been dissolved. Also, the accused denied any knowledge of the offers made by Mr. Sidman to the other co-tenants. In addition, it appears from the evidence that the higher price offered by Mr. Sidman to the other co-tenants may well have reflected an assessment of market and bargaining conditions, and the evidence does not establish that the price offered by him for the interest of Mrs. Baker was less than the true value of her interest. Neither does it establish that the accused might possibly have been able to get a higher price for her interest in that property. In any event, it is our opinion that the accused, in the performance of his duty as an attorney, was under no legal or ethical duty to contact other co-tenants in an effort to negotiate a higher price for her interest in that property.

Based upon our examination of the record, it does not appear that Mrs. Baker was poorly represented by the accused in the sale of her interest in that property. It follows that we agree with the finding by the Trial Board that the accused is not guilty of the first cause of action of the complaint. Indeed, the Disciplinary Review Board made neither a finding of fact nor a conclusion of law on this cause of action, but concluded only that there was an "appearance of impropriety" in the conduct by the accused, as subsequently discussed.

## 2. *The alleged conflict of interest.*

The second cause of action of the complaint alleged that the accused, in his representation of Mrs. Baker, "was in fact representing conflicting interests

in that his relationship with John R. Sidman precluded impartial and vigorous representation of Carlotta Baker."

It is contended by the Oregon State Bar that the conduct of the accused violated DR 5-105, which provides:

"DR 5-105 Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer.

"(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5-105(C).

"(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5-105(C).

"(C) In the situations covered by DR 1-105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

"(D) If a lawyer is required to decline employment or to withdraw from employment under a disciplinary rule, except DR 2-110(B)(3), no partner or associate of his or his firm may accept or continue such employment."

Strictly speaking, upon the dissolution of the partnership, even as late as July 1, 1977, as found by the Disciplinary Review Board, there was no actual conflict of interest by the accused in his subsequent representation of Mrs. Baker in the sale of her interest in that property to Mr. Sidman. Also, it must be noted again that by letter dated July 14, 1977, the accused

specifically informed Mrs. Baker of his relationship with Mr. Sidman.

On the other hand, even though a partnership between lawyers may have been terminated, or even if there had been no previous partnership, when two lawyers share office space it may well be that their relationship is such that representing clients with opposing interests, either in actual litigation or in business transactions, would preclude impartial and vigorous representation of such clients.[2]

Ethics Opinion Number 44, cited by the Disciplinary Review Board in its opinion, involved a lawyer who had been the partner of another lawyer and who, after dissolution of the partnership, undertook to represent a client in litigation with a client of his former partner. Under those facts, the opinion was expressed that it was improper for the lawyer to do so because he "must avoid not only impropriety but the appearance thereof." Thus, that opinion was based not upon the finding of an actual conflict of interest, but upon a finding of conduct constituting an "appearance of impropriety," as discussed later.

■    In this case, however, after reviewing the relationship between the accused and Mr. Sidman and the conduct complained of by the Oregon State Bar, we are unable to find that such conduct violated the terms of DR 5-105. First, there was no violation of DR 5-105(A) relating to "proffered employment." When Mrs. Baker became a client of the accused in June, there was nothing to indicate to him that his independent professional judgment was likely to be adversely affected by accepting such employment. Second, there was no "multiple employment" by the accused, as proscribed by DR 5-105(B) and (C). Finally, the terms of DR 5-105(D) relating to the disqualification of a partner or associate applied, if at all, to Mr. Sidman, rather than to the accused.

---

[2] *Cf.* Note and Comment, *Outside the Courtroom: Conflicts of Interest in Nonlitigious Situations,* 37 Washington and Lee Law Review 161 (1980).

Under these circumstances and under the facts of this case, we agree with the finding by the Trial Board that the accused was not guilty of this charge.

3. *Sale of property in violation of restraining order.*
■ It is clear that the accused participated in the sale of property in violation of the terms of the restraining order. The Trial Board found, however, that he did not know of the existence of that order at the time of his participation in the sale of the interest of his client in that property. His failure to discover the existence of that order was due to his own negligence. However, we agree with the Trial Board in its conclusion that such a mistake by him was "not of sufficient severity or magnitude to warrant a reprimand."

4. *Appearance of impropriety.*
■ The sole basis for the recommendation of a public reprimand by the Disciplinary Review Board is that there was an "appearance of impropriety" by the conduct of the accused, in violation of Canon 9 of the Code of Professional Responsibility.

Canon 9 provides:
"A lawyer should avoid even the appearance of impropriety."

We note, however, that DR 9-101 of the Code of Professional Responsibility of the Oregon State Bar provides as follows:
"DR 9-101 Avoiding Even the Appearance of Impropriety.
"(A) A lawyer shall not accept private employment in a matter upon the merits of which he has acted in a judicial capacity.
"(B) A lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee.
"(C) A lawyer shall not state or imply that he is able to influence improperly or upon irrelevant grounds any tribunal, legislative body, or public official."

As held by this court in *In re Ainsworth,* 289 Or 479, 614 P2d 1127 (1980) (decided today):

"In our opinion, the effect of this disciplinary rule is to define the more general terms of Canon 9 and to limit its application to the three specific situations described in DR 9-101(A), (B), and (C), none of which are applicable to the facts of this case. Indeed, the validity of Canon 9 as the basis of a complaint in a disciplinary proceeding might otherwise well be subject to question. *See Megdal v. Board of Dental Examiners,* 288 Or 293, 605 P2d 273 (1980)."

It is clear from the record that the conduct of the accused does not come within terms of DR 9-101(A), (B) or (C). It follows that we must reject the finding and conclusion by the Disciplinary Review Board that the accused is guilty of conduct which violated Canon 9 and that he should be reprimanded for that reason.

For these reasons, the complaint of the Oregon State Bar in this case is dismissed.