Argued and submitted January 8, accused publicly reprimanded June 10, 2010

# In re Complaint as to the Conduct of

## ROBERT D. NEWELL,
*Accused.*

## (OSB No. 07-142; SC S057231)

234 P3d 967

Mark J. Fucile, Fucile & Reising LLP, Portland, argued the cause and filed the briefs for the accused.

Mary A. Cooper, Assistant Disciplinary Counsel, Tigard, argued the cause and filed the brief for the Oregon State Bar.

Before De Muniz, Chief Justice, and Gillette, Durham, Balmer, Kistler, and Linder, Justices.*

PER CURIAM

---

* Walters, J., did not participate in the consideration or decision of this case.

## PER CURIAM

In this attorney discipline case, the Bar charged the accused with violating Rule of Professional Conduct (RPC) 4.2. Generally, that rule prohibits a lawyer from communicating on certain subjects with a person whom the lawyer knows is represented on those subjects. The trial panel found that the accused had violated Rule 4.2 and publicly reprimanded him.[1] The accused has requested review from this court.

Greenwood Forest Products was in the business of buying, processing, and selling lumber products. James Fahey began working as an accountant for Greenwood in 2000. While working for Greenwood, Fahey embezzled money from the company and disguised his actions in a number of ways, including creating fraudulent inventory accounts.

In 2002, Jewett-Cameron, a lumber manufacturer and wholesaler, sought to purchase Greenwood, and the two businesses entered into an asset-purchase agreement. The agreement required Jewett-Cameron to purchase all of Greenwood's inventory at cost plus two percent. The transfer of Greenwood's inventory was scheduled to take place over a period of time. In an attempt to facilitate the process, the companies agreed to put Fahey in charge of the books of both companies. After the final transfer of Greenwood's inventory, Greenwood claimed that Jewett-Cameron still owed it additional sums for inventory sales. Jewett-Cameron acceded to Greenwood's claim and paid the full price that Greenwood sought.

In late 2003, Jewett-Cameron's auditors discovered that numerous accounting errors by Greenwood had resulted in Greenwood overstating its inventory. Jewett-Cameron's auditors also discovered that Fahey had embezzled money from both Jewett-Cameron and Greenwood by transferring funds from the companies' accounts directly into his own personal banking account. The auditors concluded that Fahey

---

[1] The Bar also charged the accused with violating RPC 4.4(a). The trial panel did not find a violation of that rule. Because the Bar does not challenge that decision, we do not discuss that rule.

had altered Greenwood's inventory records, which made it appear that Greenwood had transferred more inventory to Jewett-Cameron than it actually had.

Those events gave rise to three legal actions and ultimately this disciplinary proceeding. In the first action, Greenwood sued Fahey for conversion. Specifically, upon being informed of the accounting irregularities and believing that Fahey was at least partially responsible, Greenwood brought a civil action against Fahey on September 7, 2004, for conversion and sought no less than $340,000 in damages from him. Greenwood moved for summary judgment. The trial court granted Greenwood's summary judgment motion and entered a judgment of approximately $370,000 plus interest against Fahey on May 23, 2005.

In the second action, Jewett-Cameron sued Greenwood on March 11, 2005, claiming that it had overpaid Greenwood by approximately $820,000 because of Greenwood's accounting errors. The accused represented Jewett-Cameron in that action. The accused testified in the disciplinary proceeding that Fahey's actions gave rise, in part, to Jewett-Cameron's claim against Greenwood; that is, Fahey's actions in embezzling the funds from Greenwood and overstating its inventory caused, in part, Jewett-Cameron to pay too much for Greenwood's assets.

The third action arose out of criminal charges that the state brought against Fahey. Greenwood contacted the district attorney, who brought criminal charges for theft against Fahey on April 18, 2005. Fahey retained Andrew Coit to represent him in the criminal action. On January 18, 2006, Fahey pled guilty to 10 counts of theft. As part of the plea agreement, Fahey agreed to cooperate with Greenwood's efforts to locate missing assets, and the trial court delayed the sentencing hearing to give Fahey time to carry out his part of the plea agreement.

Jewett-Cameron's civil action against Greenwood was set for trial on May 8, 2006. Initially, the accused did not believe that Fahey's testimony would be needed to prove Jewett-Cameron's claims against Greenwood. The accused described it as "one of those situations where, here's a guy who really is at the center of the action but he's in some

[sense] irrelevant to our case." The accused, however, told his associate to try to arrange a meeting with Fahey to "see what he has to say." At that point, Greenwood's civil action against Fahey had ended. The criminal action against Fahey was still ongoing, however, because Fahey was awaiting sentencing. The accused testified that he "knew [that] Coit was representing [Fahey] in the criminal case and * * * figured that would be the easiest way to get in touch with him." Accordingly, the accused's associate contacted Coit to discuss meeting with Fahey.

On April 27, 2006, the accused received the following e-mail from his associate:

> "I talked to Fahey's attorney [Coit], who wasn't too happy to talk with me. He said that Fahey gets sentenced on Tuesday of next week [May 2, 2006] and is going to the big house. He is going to talk with Fahey about meeting with us before then, but said he would require us to waive any claims against Fahey before we talk to him. I am supposed to call him tomorrow to see if Fahey is even willing to talk to us."

The accused believed that Fahey would be imprisoned before trial and, at that point, decided that he did not need to interview Fahey.

On May 1, 2006, Coit moved to continue Fahey's sentencing. On Thursday, May 4, the accused learned that Greenwood had subpoenaed Fahey to testify in Jewett-Cameron's action against Greenwood, and the accused decided that he needed to talk to Fahey before he testified at trial. The accused's associate attempted to contact Coit so that they could speak to Fahey. On that day, at 4:54 pm, the associate sent an e-mail to the accused saying that he had left a message for Coit but that, given Coit's failure to return his earlier calls, he did not expect Coit to return his most recent call. A half-hour later, the associate sent the accused a second e-mail, confirming that Fahey had appeared in court with Coit to set over the sentencing hearing in the criminal action and that Greenwood had subpoenaed Fahey to testify in Jewett-Cameron's action against Greenwood.

On Friday, May 5, the accused had a subpoena served on Fahey for a deposition scheduled for 9:00 a.m. on

Saturday, May 6. Fahey received the subpoena at 6:35 p.m. on Friday, approximately 14 hours before the deposition was scheduled to begin. Pursuant to ORCP 39, the accused served Greenwood's counsel with notice of the deposition. The accused, however, did not attempt to notify Coit that he had subpoenaed Fahey.

The next morning at Fahey's deposition, the accused and Greenwood's counsel were present. Coit was not there. At the beginning of the deposition, Fahey asked to make a statement and said:

> "For the record, I was served yesterday evening at 6:35 p.m. I have not had a chance to contact my counsel. As there is a pending criminal case on this in Washington County, anything alluding to any of those areas I will be taking the Fifth Amendment."

After asking some background questions, the accused began questioning Fahey about his work at Greenwood.

> "[The accused]: What process did you see in your role as senior accountant when corporate inventory was purchased? What paperwork did you see?
>
> "[Fahey]: The most I would have seen was an invoice coming in that went into payables.
>
> "[The accused]: So an invoice from Jones Lumber for eight truckloads of raw plywood?
>
> "[Fahey]: That's correct.
>
> "[The accused]: And if that went someplace to be processed, how would you know that?
>
> "[Fahey]: On this one I'm going to assert my Fifth Amendment privilege until I've consulted counsel."

The accused then began to ask Fahey numerous questions about Fahey's criminal case:

> "[The accused]: Okay. Well, am I correct that you've pled guilty to several crimes in state court?
>
> "[Fahey]: Yes.
>
> "[The accused]: Okay. What are those crimes?
>
> "[Fahey]: I believe they're theft or aggravated theft.

"[The accused]:    Ten different counts; right?

"[Fahey]:    Correct.

"[The accused]:    And the theft was from Greenwood Forest Products, Inc.?

"[Fahey]:    Yes.

"[The accused]:    This question I just asked you that you asserted your Fifth Amendment rights to, isn't that covered by that plea?

"[Fahey]:    I can't—I don't know.

"[The accused]:    All right. So if I ask you detailed questions about accounting processes and paperwork and so on for inventory and accounts payable and accounts receivable at Greenwood Forest Products, you're going to assert your Fifth Amendment rights?

"[Fahey]:    Until I can consult counsel and get a clarification, yes.

"[The accused]:    Okay. Who is your counsel?

"[Fahey]:    Andrew Coit.

"[The accused]:    Can you spell the last name please?

"[Fahey]:    C O I T.

"[The accused]:    And he's located here in Portland?

"[Fahey]:    That's correct. He has an office in Portland and an office in Eugene.

"[The accused]:    And you have not talked to him about this deposition?

"[Fahey]:    That is correct.

"[The accused]:    Have you tried to retain any other counsel for this deposition?

"[Fahey]:    No.

"[The accused]:    Is Andrew Coit the only person who has represented you in connection with any legal proceedings?

"[Fahey]:    No.

"[The accused]:    Who else has represented you?

"[Fahey]: I have been represented by Andrea Davis of Harrang Long Gary Rudnick.

"[The accused]: Anyone else?

"[Fahey]: Adam Dean is Andrew Coit's law partner.

"[The accused]: And I take it you don't have home phones for either Adam Dean or Andrew Coit?

"[Fahey]: That is correct.

"[The accused]: What has Andrea Davis represented you in connection with?

"[Fahey]: A civil case.

"[The accused]: That's the case brought by Greenwood Forest Products against you?

"[Fahey]: Correct."

The accused continued, and, in the course of the deposition, repeatedly asked Fahey questions about the amount of money that Fahey had taken—an issue that was central both to Jewett-Cameron's lawsuit against Greenwood and also to the state's criminal charges against Fahey. Fahey took the Fifth Amendment in response to some of the questions and expressed concern that his criminal attorney was not present to represent him at the deposition.

The accused continued asking Fahey questions about the criminal case, but Fahey did not respond to the questions because he thought the court had issued a protective order. When the accused asked about the scope of the protective order, Fahey responded, "I don't know. Without counsel here I can't answer that." The deposition continued with the accused asking more questions and Fahey asserting the Fifth Amendment at various times. Later in the deposition, Fahey discussed his meeting with Greenwood's counsel regarding Jewett-Cameron's action against Greenwood. Fahey told the accused that Coit had arranged the interview and explained that he had had a lawyer present with him at that meeting.

"[The accused]: Why did you agree to meet with [Greenwood's] lawyer in connection with this case?

"[Fahey]: Mr. Coit had mentioned to me, had mentioned that he or his firm had been contacted by [Greenwood's counsel in this civil case]. I was asked if I would be willing by Mr. Coit to sit down with [Greenwood's counsel]. I asked Mr. Coit if there was any advantage or disadvantage for me to do so. Mr. Coit informed me that since, that his, since he or Adam Dean would be there, the scope of what we would discuss would be incredibly limited but with regard to the fact that it is possible that a letter could have been written to the judge [in the criminal case] saying at least he [Fahey] agreed to sit down with us and talk, that it might be within my benefit to do so. That is all from Mr. Coit to me.

"[The accused]: Do you know why your lawyer has refused to talk to our firm?

"[Fahey]: No idea. I had no idea that your firm had even attempted to contact my attorney."

On Monday, May 8, Coit learned of the deposition and later moved to seal the deposition transcript. After holding a hearing, the trial court granted Coit's motion. Coit later reported the accused to the Bar.

The Bar filed disciplinary proceedings against the accused. In its first cause of complaint, the Bar alleged that the accused had violated RPC 4.2 because he deposed Fahey on a subject on which the accused knew that Fahey was represented in the criminal matter. Alternatively, the Bar alleged that the accused violated that rule when he deposed Fahey on a subject on which the accused knew that Fahey was represented in the civil action between Jewett-Cameron and Greenwood. In his answer, the accused admitted most of the allegations in the complaint, including the allegation that he knew that Fahey had representation in connection with his criminal prosecution for theft. However, the accused denied that he knew that Fahey was represented for purposes of the Jewett-Cameron litigation. The accused also asserted that, under RPC 4.2(b), the deposition was authorized by law.

The trial panel found that the accused had violated RPC 4.2. Specifically, the panel found that the accused asked questions related to the criminal conduct in violation of RPC 4.2 and rejected the accused's argument that RPC 4.2 applies

"only if the witness is represented in the same proceeding as the proceeding in which the deposition was taken." The panel concluded that that rule covers "instances such as the present case in which the [a]ccused knew the witness to be represented in a pending criminal proceeding but nevertheless proceeded to interrogate the witness about that subject."

The trial panel also rejected the accused's argument that the questions fell under the "authorized by law" exception in RPC 4.2(b). The panel reasoned that "a witness's right to counsel can[not] be overcome by a deposition subpoena alone." Alternatively, the panel reasoned that, even if it could, the circumstances in this case—a Friday evening summons for a Saturday morning deposition without any notice to the witness's counsel—did not come within the exception. After noting that the accused had no prior disciplinary record, the panel publicly reprimanded him. The accused sought review from this court. The Bar did not seek review and does not contest the trial panel's disposition of this matter.

On review, the accused notes that the trial panel found that he did not know that Coit represented Fahey in the civil action between Jewett-Cameron and Greenwood but that he did know that Coit represented Fahey in the pending criminal action. In the accused's view, that finding is dispositive. Specifically, the accused argues that RPC 4.2 barred him from contacting Fahey only if the accused knew that Fahey was represented in the action between Jewett-Cameron and Greenwood. He contends that, because he did not know that fact, RPC 4.2 does not apply. The accused argues alternatively that, even if RPC 4.2 applied, his communication with Fahey came within a specific exception to that rule for communications "authorized by law." We begin with the accused's argument that RPC 4.2 only applies if he knew that Coit represented Fahey in Jewett-Cameron's action against Greenwood.

■■ RPC 4.2 provides:

"In representing a client or the lawyer's own interests, a lawyer shall not communicate or cause another to communicate on the subject of the representation with a person the lawyer knows to be represented by a lawyer on that subject unless:

"(a) the lawyer has the prior consent of a lawyer representing such other person;

"(b) the lawyer is authorized by law or by court order to do so; or

"(c) a written agreement requires a written notice or demand to be sent to such other person, in which case a copy of such notice or demand shall also be sent to such other person's lawyer."

RPC 4.2 does not prohibit all communications between a lawyer and a person represented by counsel. Rather, that rule prohibits communications between lawyers and represented persons only when (1) the communication occurs in the course of the lawyer's representation of a client or the lawyer's interests; (2) the person with whom the lawyer communicates is represented; (3) the communication is on the subject of both the lawyer's representation and the person's representation; and (4) the lawyer knows that the person is represented on that subject.

In this case, there is no dispute that the accused communicated with Fahey in the course of representing Jewett-Cameron, that Fahey was represented in the criminal action, and that the accused knew that he was communicating with Fahey on the subject on which Fahey was represented. The only question is whether the communication concerned the subject on which the accused represented Jewett-Cameron and on which Coit represented Fahey. As a factual matter, the answer to that question is "yes." The subject on which the accused represented Jewett-Cameron was Greenwood's alleged overstatement of its inventory. The accused sought to recover part of the purchase price from Greenwood on the theory that Greenwood's assets were less than its books showed. Coit represented Fahey on that same subject. The criminal action was based on Fahey's embezzlement from Greenwood, which resulted in Greenwood's overstated inventory. Factually, each lawyer's representation involved a common subject—whether Greenwood's books were overstated.

The accused does not dispute that factual proposition. He argues instead that the word "subject" in RPC 4.2 means "matter" and that "matter" means the specific legal

matter on which he was representing his client. More specifically, the accused argues that his communication with Fahey would violate RPC 4.2 only if Coit represented Fahey in Jewett-Cameron's action against Greenwood and if the accused knew that fact.

The accused's argument is difficult to square with the text of the rule. The rule uses the word "subject," not "matter." In this context, "subject" means

> "something concerning which something is said or done
> * * * ‹let's say no more on that ›› ‹treated religion as the first
> and greatest of ~s› ‹the ~ of your essay› ‹a ~ worth of a great
> dramatist›."

*Webster's Third New Int'l Dictionary* 2275 (unabridged ed 2002). "Subject," the word that the rule uses, is broader than the word "matter," as the accused defines it.[2]

The context of RPC 4.2 is also at odds with the accused's interpretation of the term "subject." *See Stevens v. Czerniak*, 336 Or 392, 401, 84 P3d 140 (2004) (explaining that the context for interpreting a statute's text includes " 'the preexisting common law and the statutory framework within which the law was enacted' " (quoting *Denton and Denton*, 326 Or 236, 241, 951 P2d 693 (1998)). RPC 4.2 is generally modeled on American Bar Association (ABA) Model Rule 4.2 (2002).[3] Oregon's rule differs from the ABA model rule in at least one respect. The model rule prohibits a lawyer from communicating with a "person the lawyer knows to be represented by another lawyer in the matter." The Oregon rule prohibits a lawyer from communicating with a person "the lawyer knows to be represented by a lawyer on that subject."

---

[2] "Matter" is a defined term for the purposes of the Rules of Professional Conduct. *See* RPC 1.0(i) (defining matter). In discussing the accused's argument, we express no opinion on whether his definition of the term "matter" is consistent with the definition of that term in RPC 1.0(i). Rather, the question in this case is whether "subject," the term that RPC 4.2 uses, is broader than "matter," as the accused defines it.

[3] ABA Model Rule 4.2 provides:

> "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."

The Oregon rule's use of "subject" rather than the defined term "matter" cuts against the accused's argument that we should substitute "matter" for "subject." *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 839 P2d 1143 (1993) (use of a term in one section of a statute but not another implies a purposeful choice); RPC 1.0(i) (defining "matter"). Indeed, RPC 4.2 continues the use of the term "subject" found in *former* DR 7-104 (1984). In construing a former version of the rule, this court held that it prohibited a district attorney from communicating with a defendant regarding the defendant's participation as an undercover drug informant when the district attorney knew that the defendant was represented on pending rape and robbery charges. *In re Burrows*, 291 Or 135, 143-44, 629 P2d 820 (1981). In that case, the accused argued that his communications did not relate to the rape or the robbery charges, the particular matters on which the defendant was represented, "but to the separate subject matter of undercover drug activities." *Id.* at 142. This court disagreed. It reasoned that, because it was clear that the defendant's participation as an undercover informant would affect his sentencing in the rape and robbery proceedings, " 'the subject matter of the [accused's] communications necessarily involved the pending criminal charges.' " *Id.* at 143-44 (quoting and adopting the trial panel's findings).

In *Burrows*, this court did not interpret the rule narrowly to refer only to the pending criminal action, as the accused urges. Had it done so, it would have held that the matter on which the defendant in *Burrows* was represented was limited to the rape and robbery proceedings and did not extend to his participation as an undercover agent or any communications regarding that future status. That interpretation provides context for the use of the term "subject" in RPC 4.2.

The accused, however, points out that, after this court decided *Burrows* in 1981, *former* DR 7-104(A)(1) was amended in 1984 to prohibit communication "on the subject of the representation, or on directly related subjects, with a person he knows to be represented by a lawyer on that subject, or directly related subjects." The accused also notes that, when RPC 4.2 was adopted in 2005, that rule continued to use the word "subject" but omitted the phrase "or on directly

related subjects." That omission, the accused reasons, limits the scope of the present rule to situations where the contacted party is represented specifically in the contacting attorney's case. RPC 4.2, however, continues to use the word "subject." Although the removal of the phrase "or on directly related subjects" may make a difference in some other case, that omission is of no consequence here. Rather, it is sufficient for the purposes of this case to hold, as we do, that the accused communicated with Fahey on the subject on which Coit represented Fahey and on which the accused represented Jewett-Cameron. The accused's communication accordingly was a "communicat[ion] on the subject of the representation" within the meaning of RPC 4.2.

■ The accused raises a second argument. He contends that, even if RPC 4.2 generally prohibited him from communicating with Fahey regarding his embezzlement of funds from Greenwood, his communication with Fahey came within an exception to that general rule. Specifically, the accused argues that his communication with Fahey was "authorized by law" under Rule 4.2(b). The accused reasons that "[d]epositions have been recognized both nationally and in Oregon as being 'authorized by law' for purposes of the rule." He concludes that, because the deposition was properly noticed under ORCP 39,[4] his communication came within that exception.

We agree with the accused that a deposition is authorized by law, but we think that the accused reads the exception too broadly. RPC 4.2 prohibits a lawyer, in the course of representing a client, from communicating on the subject of the representation with a person the lawyer knows to be represented by a lawyer on that subject. RPC 4.2 recognizes three exceptions to that broad prohibition: (1) if the other lawyer consents; (2) if the communication is authorized by law; or (3) if a written agreement requires a written demand or notice be sent to the represented person. Without the "authorized by law" exception or the consent of the opposing party's lawyer, a lawyer could not cross-examine the

---

[4] The accused notes that ORCP 39 C(1) requires notice to "every other party to the action." The accused reasons that, under ORCP 39 C(1), he was not required to notify Fahey's counsel because Fahey was not a "party to the action."

opposing party at trial, depose that party, or subpoena a represented witness to testify before the grand jury. *See Restatement (Third) of the Law Governing Lawyers* § 99 comment g (2000) (direct communications permitted under the "authorized by law" exception for cross-examination and depositions); *United States v. Schwimmer*, 882 F2d 22, 28 (2d Cir 1989) (federal rule of criminal procedure permitted federal prosecutor under the "authorized by law" exception to question represented witness during grand jury proceedings).

The "authorized by law" exception permits a lawyer to communicate directly with another party in those situations without the consent of that party's lawyer. However, nothing in the terms of that exception or the cases interpreting it suggests that the exception goes as far as the accused would take it. The accused would interpret the exception to permit an end-run around the represented person's lawyer. As we understand the accused's argument, as long as a lawyer can subpoena a nonparty witness to testify at trial or in a deposition before the witness has an opportunity to contact his or her own lawyer, the "authorized by law" exception would permit the lawyer to ask that witness unlimited questions without any opportunity for the witness's lawyer to protect his or her client's interests. That interpretation of the exception, if accepted, would undermine the purpose of the rule. *See Restatement* § 99 comment g (2000) ("Whether direct communication is authorized depends on the legal justification for the contact in the situation, having regard for the interest in protecting client-lawyer relationships and avoiding overreaching of represented nonclients."). (Parenthetical omitted.)

The accused identifies no case that has adopted such a sweeping interpretation of the exception. Rather, the cases that the accused cites assume that the represented person who is subject to deposition, cross-examination, or questioning before the grand jury has had, at minimum, an opportunity to notify his or her lawyer. In *Schwimmer*, for example, the Second Circuit explained that the federal rules of criminal procedure permitted the federal prosecutor to question the witness but did not permit the witness's counsel to be present. 882 F2d at 28. In holding that the prosecutor's

conduct was authorized by law within the meaning of a comparable ethical rule, the Second Circuit explained that the witness

> "[wa]s not the target of [the prosecutor's] investigation, his testimony is immunized pursuant to § 6002, and *he may consult with counsel at any time outside the grand jury room.* Accordingly, the prosecutor's direct questioning of Schwimmer before the grand jury outside the presence of his counsel is authorized by law and therefore does not violate the Code of Professional Responsibility."

*Id.* (emphasis added). Contrary to the accused's interpretation of that exception, the Second Circuit did not read the exception to give one lawyer the power to unilaterally exclude another lawyer from any opportunity to protect his or her client's interests.

The accused argues that the trial panel's decision in *In re Blackmore,* 12 DB Rptr 286 (1999), is persuasive and that we should follow it. In our view, the accused's reliance on *Blackmore* is misplaced, because the question in that case differs from the question presented here. The disciplinary proceeding against Blackmore arose as result of two actions. In the first action, International Composites brought a contract claim against Evergreen Plastics. *Id.* at 287. In the second action, one of Evergreens' former employees, Tyacke, brought a wage claim against Evergreen. *Id.* Blackmore represented Evergreen in both International Composites' contract action and also in Tyacke's wage claim. *Id.*

International Composites served a notice of deposition on Tyacke in its action against Evergreen. *Id.* Before attending the deposition, Tyacke consulted with his lawyer, who decided that Tyacke should attend the deposition alone. *Id.* Tyacke did so, and Blackmore questioned him during the deposition on matters that were relevant to International Composites' contract claim against Evergreen. *Id.* Those matters were also relevant to Tyacke's wage claim against Evergreen. *Id.* at 286-87.

The trial panel held that Blackmore's communication with Tyacke at the deposition did not violate *former* DR 7-104(A)(1) because it was authorized by law. Among other

things, the trial panel reasoned that, were the answer otherwise, "Tyacke could prevent [Evergreen's] discovery of jointly relevant information in the commercial case by refusing to bring [his lawyer] to his deposition." *Id.* at 290.[5]

In *Blackmore*, Tyacke had the opportunity to consult with his lawyer and decide whether to attend the deposition alone, knowing that he would be subject to questioning by Blackmore. In this case, Fahey never had that opportunity. The difference matters, as this court recognized in *In re Williams*, 314 Or 530, 840 P2d 1280 (1992). In *Williams*, a tenant had brought her lawyer to a statutorily required meeting with her landlord, who was represented on that subject. *Id.* at 538-39. The tenant's lawyer knew that fact but communicated with the landlord without the landlord's lawyer being present. *Id.* In the resulting disciplinary proceeding, this court rejected the tenant's lawyer's argument that the statute that required the meeting authorized the tenant's lawyer to communicate with the landlord without the landlord's lawyer present. *Id.* at 539. The court then noted:

> "The accused also argues:
>
>> " 'If [the accused] were required to refrain from attending the meeting, then [the landlord], by choosing not to have her attorney attend, could have effectively negated [the tenant's] right to representation [at the statutorily required meeting]. The authorized by law exception prevents that result.'
>
> "Had [the landlord's lawyer] chosen not to attend the meeting, knowing that the accused would attend, a different case would be presented. That case is not before us."

*Id.* at 539 n 4.

*Blackmore* posed the same problem that the accused's hypothetical posed in *Williams*, and we cannot improve on the answer in *Williams*. If, as in *Blackmore*, Fahey's lawyer had chosen not to attend the deposition, knowing that the accused would attend and question Fahey,

---

[5] The trial panel in *Blackmore* offered various rationales to support its conclusion. We identify only one of those rationales and express no opinion on the other rationales. We also note that, although disciplinary panel opinions may be persuasive, they have no precedential value in this court.

a different case would be presented. That case is not before us, and we need not endorse or disagree with the result in *Blackmore* to conclude that the "authorized by law" exception does not extend so far that it permits one lawyer to unilaterally exclude a represented witness's lawyer from the deposition.

■        Having concluded that the exception does not apply, we turn to the sanction. The trial panel issued a public reprimand. The Bar does not argue that a greater sanction is appropriate. The accused contends only that no sanction should be imposed. The issue regarding the sanction accordingly reduces to a narrow one: If we conclude, as we do, that the accused violated a disciplinary rule, may we decline to impose any sanction on the accused?

On that point, Bar Rule (BR) 6.1(a) identifies the potential "dispositions or sanctions in disciplinary proceedings." They are: (1) dismissal of some or all the charges; (2) a public reprimand; (3) a suspension for a period from 30 days to five years; (4) a suspension for a period from 30 days to five years stayed in whole or in part; and (5) disbarment. BR 6.1(a). Under that rule, if we find that a lawyer has violated a disciplinary rule, the minimum sanction that we can impose is a public reprimand.[6] We recognize that, in this case, there are substantial mitigating factors. The trial panel found, and the Bar does not dispute, that the accused has an exemplary reputation among his peers and also a long and distinguished record of service to the Bar and the community. The rules, however, require that, if we find a violation, as we do, one of the four listed sanctions must follow. In this case, we conclude that the appropriate sanction is a public reprimand. Publishing an opinion in which we find that the accused committed an ethical violation is in itself a public acknowledgment of improper conduct. A public reprimand is merely a mirror of the opinion itself.

The accused is publicly reprimanded.

---

[6] The accused cites a prior opinion of this court, *In re Ainsworth*, 289 Or 479, 614 P2d 1127 (1980), for the proposition that this court "should simply let its opinion stand without sanction." However, unlike in this case where we find specifically that the accused violated an ethical rule, in *Ainsworth*, we declined to specifically determine whether the accused had committed an ethical violation and dismissed the complaint. *See id.* at 490-91, 493.