547 P.2d 517

**Ricardo G. MOTA, Petitioner,**

**v.**

**The Honorable Robert B. BUCHANAN, Judge of the Superior Court, In and For the County of Pima, State of Arizona, Respondent,**

**and**

**The STATE of Arizona, Real Party In Interest.**

**No. 2 CA–CIV 2127.**

Court of Appeals of Arizona, Division 2.

March 26, 1976.

John M. Neis, Pima County Public Defender, by Anne-Marie Brady, Asst. Public Defender, Tucson, for petitioner.

Dennis DeConcini, Pima County Atty., by Frank W. Frey, Deputy County Atty., Tucson, for real party in interest.

## OPINION

HOWARD, Chief Judge.

The respondent court's denial of two motions of petitioner, defendant in a pending criminal case, is the subject of this special action. The main thrust of petitioner's attack is directed to the denial of his motion to interview two prosecution witnesses. The other challenged ruling is the denial of his motion for severance.

Briefly, the sequence of events is as follows. On November 11, 1975, petitioner and two others were arrested in Ajo, Arizona by members of the Tucson Metropolitan Area Narcotics Squad. They were subsequently indicted for unlawful possession of heroin for sale and conspiracy to sell heroin. They were arraigned on November 20, 1975, and a February 4, 1976 trial date was set. The State timely provided the defendants with the discovery material required by Rule 15.1, Rules of Criminal Procedure. The defendants did not fulfill their correlative obligations.

On January 15, 1976, a co-defendant filed a motion to suppress in which petitioner joined. The motion was set for hearing on February 2nd and on January 29, 1976, petitioner filed a motion for continuance which was also set for hearing on February 2. The grounds asserted in the motion for continuance was that petitioner's attorney had made repeated, unsuccessful efforts to contact two of the State's witnesses, Redondo and Canez, agents of the Tucson Metropolitan Area Narcotics Squad. In her motion, counsel stated that Redondo was never in his office when she telephoned and that she had left messages requesting him to call her but he had failed to respond. As to Canez, who no longer worked with the narcotics squad, she had been unable to locate him. On January 30, the State filed a motion for sanctions asking the court for appropriate relief because the defendants had not complied with their duty to disclose. The motion requested alternative relief—either preclusion or that immediate disclosure be ordered and a continuance granted. This motion was also set for hearing on February 2nd.

On February 2nd and 4th, 1976, the respective motions were heard. At the conclusion of the hearing, the court ordered the defendants to make disclosure by February 5th, continued the trial date to February 18, and ordered the prosecutor to make Canez and Redondo available for defense counsel to interview at a mutually convenient time on February 6, 1976. The judge was of the opinion that as long as the prosecutor offered to make the witnesses available, "the witnesses come with

whatever conditions the witnesses may want to impose",[1] and that he had no authority to make any witness talk to either side in private. He also stated:

"And I'm entering no order as to who these witnesses can have present. If Mr. Canez or Mr. Redondo wish to have the prosecutor · present they may. If they don't want to have him present, they may.

I just want you gentlemen to—and lady, to talk to them and get prepared for trial. This fighting about who'se [sic] going to see who and when and where and whether the prosecutor is going to be there when you talk to the witnesses or not is—could go on for the next 2 weeks and you'd never probably make the trial date that I have just set."

In compliance with the court's order, the prosecutor arranged for a meeting in his office on Friday afternoon, February 6, at 1:30 p.m. All three defense attorneys appeared at the designated time and place, but the agents telephoned that they would be slightly delayed. Petitioner's attorney thereupon returned to her office, requesting that she be phoned when the agents arrived. The other two defense attorneys remained. When the agents arrived, the prosecutor telephoned petitioner's counsel, and was informed that she had left for the day. In fact, however, this information was incorrect as the attorney was in attendance at criminal arraignments. The agents were interviewed by the other two defense attorneys. ·

On February 9, petitioner's counsel filed a "motion to interview witnesses". She requested the court to order Redondo and Canez to make themselves available to be interviewed by her and to order the prosecutor to "cease interfering with defense counsel's attempts to interview the witnesses." The motion was opposed by the State on the grounds that the witnesses had cooperated fully in making themselves availa-

ble for a personal interview and that to require them to do so again would constitute an extreme hardship to them and the City of Tucson. In other words, the State's position was that the witnesses had not been uncooperative. On February 13, petitioner's counsel filed a motion for continuance on the grounds that she had been unable to speak with crucial witnesses. A minute entry order dated February 17, the date set for hearing the motions, recites that all pending motions were continued "until such time as this case is called for trial and such motions will be heard just prior to the commencement of the trial". On February 17, petitioner's counsel filed a motion for severance.

The hearing on all pending motions was set for February 20. At this hearing, petitioner's counsel and the prosecutor gave testimony with respect to the motion to interview witnesses. The court denied the motion to interview and ordered the prosecutor to make the witnesses available for petitioner's attorney to interview, in the prosecutor's presence, not less than one hour prior to the time the case was called for trial. In other words, since the prosecutor was going to have to have the witnesses present for trial, he was to have them present one hour earlier so that defense counsel could interview them. Petitioner's counsel stated that this did not give her sufficient time to prepare a defense but the court was of the opinion that its order afforded her an adequate opportunity to interview the witnesses.

In these special action proceedings, petitioner's counsel maintains that a private interview with the witnesses is necessary since it is unlikely that the prosecutor would remain a passive spectator at the interview. She argues that the witnesses were willing to confer privately with defense counsel and that because of subsequent "prosecutorial interference" were prevented from doing so; ergo, the wit-

1. The superior court judge who heard and ruled on the pending motion was one other that the juage whose ruling is challenged in this special action.

nesses should be ordered to confer privately with her.

■ Initially we would point out that we are not dealing with a situation where the witnesses are in custody, thus permitting defense counsel to assert a right to a private interview. See Annot. 14 A.L.R.3d 652. The prosecutor claims that the police are not independent witnesses and are "the prosecutor's partners in the fight against crime and criminals". A witness, however, is not the exclusive property of either the prosecution or the defendant. *United States v. Matlock*, 491 F.2d 504 (6th Cir. 1974); *United States v. Scott*, 518 F.2d 261 (6th Cir. 1975). A prosecution witness need not grant an interview to defense counsel unless he chooses to do so. *People v. Peter*, 55 Ill.2d 443, 303 N.E.2d 398 (1973); *U. S. v. King*, 368 F.Supp. 130 (D.C.Fla.1973); *U. S. v. Dryden*, 423 F. 2d 1175 (5 Cir. 1970).

■ Although a witness may refuse to be interviewed by defense counsel, the prosecution has no right to interfere with or prevent a defendant's access to a witness, absent any overriding interest in security. *Gregory v. United States,* 125 U. S.App.D.C. 140, 369 F.2d 185 (1966); *Lewis v. Court of Common Pleas of Lebanon County*, 436 Pa. 296, 260 A.2d 184 (1969); *Martinez v. State*, 496 P.2d 416 (Okl.Cr.1972); *People v. Jackson*, 116 Ill.App.2d 304, 253 N.E.2d 527 (1969); *United States v. King*, supra; *United States v. Scott*, supra. We approve the following statement by the Pennsylvania Supreme Court in *Lewis*, supra:

> "We are of the view that, *in the absence of an affirmative and convincing showing of exceptional circumstances or compelling reasons,* a district attorney may not interfere with the pre-trial interrogation by a defense counsel of persons who may be called upon as witnesses in the case. Specifically, after a witness has stated that he is willing to talk with counsel for the defendant unless the dis-

trict attorney objects, the district attorney may not, as we already indicated, relate his lack of consent to the witness. The district attorney may not interfere with or impose his preference or judgment on the defendant. In a case such as that at bar, the district attorney has no legitimate interest in preventing the witness from aiding the defendant. A public prosecutor is entrusted with an awesome duty which requires him to serve the interest of justice in every case. For this reason, a witness who may have information which is favorable to the defense must be made available to the defense. [citations omitted]. Unquestionably, we cannot force a district attorney to approve of such questioning; however, we may certainly bar him from communicating his disapproval to the witness. We are not hereby saying that witnesses themselves may be compelled to speak with defense counsel prior to trial. We merely intend to prevent the prosecuting attorney from interfering with this aspect of the defendant's preparation for trial.

This particular case involves no special facts which justify interference by the district attorney. We recognize that some cases may present the likelihood that such pre-trial contact between defense counsel and a willing witness might not be in the best interest of securing justice. Where a district attorney can show some special circumstances, such as the probability that the witness will be or has been intimidated or otherwise induced to falsify his testimony, then justice may require that the proposed pre-trial interview be had with certain safeguards or should not take place. The decision as to whether such a situation exists should properly be left to the discretion of the trial court. [citation omitted]. Under proper circumstances the trial court may, in its discretion and upon stated grounds for such drastic action, make such order as it should deem necessary in the individual

case." 260 A.2d at 188–189. (Emphasis in original)

█ The importance of a defendant's right of access to a witness is somewhat tempered by the witness' equally strong right [2] to refuse to say anything. *United States v. Scott*, supra. This principle was recognized by the court at the conclusion of the February 4th hearing when it directed the prosecutor to arrange an interview between defense counsel and the two witnesses after petitioner's counsel demonstrated her inability to contact the witnesses. The court properly refused to direct that no one be present other than the witnesses and defense counsel since the choice belonged to the witnesses. It was unfortunate that because of a "comedy of errors" counsel for petitioner did not have an opportunity to interview the witnesses at the designated time.

At the February 20th hearing before the respondent judge, as we indicated above, both the prosecutor and petitioner's counsel testified. The court apparently concluded from the prosecutor's testimony that he had not interfered with the defense's right of access to the witnesses. The prosecutor testified:

"I told her, not that she would not be able, or not be permitted to speak to Agent Canez or Agent Redondo but rather, I told her that they would not talk to her unless I was present, and that I would be happy to arrange a meeting between them and she and the other defense attorneys at any mutually agreeable time. To this she protested that she wanted to do it alone . . . .

I had no contact with Agent Redondo either before that phone call, her phone call to me or after her phone call to me. If Agent Redondo broke his appointment with her, he did so for his own reasons, not because I told him not to talk to her.

My next contact with Agent Redondo was the day of the hearing in this matter which we've already referred to as being February 4th, 1976. I didn't talk to Agent Canez or Redondo about speaking to Defense Attorneys or not to speak with any Defense Attorneys as the case may be at anytime from the inception of this case until February 4th, 1975 [sic]."

Counsel for petitioner elicited the following testimony from the prosecutor as to events which occurred after the February 2nd hearing:

"Q. And you were telephoning me into the room, the Bailiff's room where Agent Canez and Redondo were sitting?

A. Yes.

Q. And you recall that I attempted to set up an appointment speaking directly to Agent Redondo?

A. Yes.

Q. And do you recall interrupting my conversation and alleging that the interview could only take place after 5 o'clock because you were in trial all that week?

A. What I recall telling you was that you were not entitled to interview the witnesses until you provided me with some discovery which as of that date, February 2nd, you had not yet provided.

Q. Do you recall your interfering with my attempt to establish an interview time with Agent Redondo?

A. I recall no such interference.

Q. Do you recall interrupting my conversation with Agent Redondo to point out that I had no right as you said, to interview Agent Redondo?

A. Yes.

Q. Do you recall ordering Agent Redondo to follow you out of the room?

A. I recall asking him to come out, to leave the building with me because it

---

2. This right to refuse to answer questions during a private interview does not foreclose defense counsel from obtaining discovery from an uncooperative witness. See Rule 15.3, Rules of Criminal Procedure.

was the end of the day to get a beer or something.

Q. Do you recall that he was talking and you had to come back in two or three times and said, 'Come on let's go.' ?

A. I recall standing in the doorway while he was in the center of the room talking to you.

Q. And do you recall repeatedly breaking in my conversation with him to urge him to come away with you?

A. yes."

 The respondent court concluded that anything which had transpired prior to February 4th was irrelevant since on that date the prosecutor had been ordered to make the witnesses available for defense counsel to interview on February 6th, which he had done. Since petitioner's counsel had not availed herself of the opportunity as had the other two defense attorneys, the court denied her motion for an interview but directed that the witnesses be available to her one hour prior to trial. Under all the circumstances, we cannot say the court erred in denying petitioner's motion for an interview. If, as counsel postulates, the interview points out the need for additional time to prepare a defense, a motion for continuance would be the appropriate remedy. We do believe, however, that the court erred in directing that the interview take place in the presence of the prosecutor. The decision as to whether the interview be private is neither for the prosecutor nor the defense counsel but rests with the witness.[3]

We therefore direct that the words "in the prosecutor's presence" be deleted from the court's order.

We decline to interfere as to the denial of the motion for severance since at this juncture of the proceedings the possibility of prejudice is not a demonstrable reality and whether or not there is a possibility of prejudice is for the respondent court to determine.

For the foregoing reasons, we sustain the challenged rulings with the modification previously indicated.

KRUCKER and HATHAWAY, JJ., concur.

---

3. We decline to consider affidavits executed by Redondo and Canez, appended to the State's response filed in this court, which recite inter alia:

"That deputy county attorney Frank W. Frey has advised the affiant that he desires to be present at any interview with defense counsel regarding this case; and

That it is my desire to have a member of the Pima County Attorney's Office present at any interview with defense counsel."