Argued and submitted December 15, 1980, affirmed March 9, reconsideration denied April 2, petition for review allowed April 28, 1981

STATE OF OREGON,
*Respondent,*

*v.*

ROSIE LEE YORK,
*Appellant.*

(No. C 80-02-30569, CA 17779)

624 P2d 660

Lawrence Matasar, Metropolitan Public Defender, Portland, argued the cause and filed the brief for appellant.

James C. Rhodes, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General and William F. Gary, Deputy Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts, Judge, and Campbell, Judge Pro Tempore.

ROBERTS, J.

**ROBERTS, J.**

Defendant was found guilty of theft in the second degree, ORS 164.045, and assault in the second degree, ORS 163.175, as the result of an incident in which, leaving a Portland foodstore with a stolen package of ground beef and a stolen bar of soap in her purse, defendant was confronted by a store employe, pulled a small knife from her purse and stabbed him in the shoulder. She assigns as error the trial court's refusal to grant her motion for mistrial, made when the employe testified he refused to talk to defense investigators before trial because the deputy district attorney prosecuting the case had told him "it would be better if we didn't say anything." The issue is whether, on the record before us, such prosecutorial conduct requires a mistrial.[1] We find it does not.

Defendant alleges the prosecutor's conduct amounted to a denial of her right to counsel and to confront the witnesses against her, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, and a denial of due process of law, secured by the Fourteenth Amendment to the United States Constitution and Art I, § 10, Oregon Constitution.

At trial, the state called four witnesses: two policemen, the store manager, who was an eyewitness to most of the events, and the assault victim, a store employe. The defense called the defendant and her companion. The store manager refused to discuss the case with defense investigators before trial, claiming it was "against store policy" to do so. At trial, the employe who was assaulted testified as follows about his refusal to speak to investigators:

"Q [By defense attorney] Did somebody call you on the telephone, say that he was an investigator from the Public Defender's Office, that he represented a Ms. Rosie York and that he wanted to talk about this case with you?

---

[1] We note that the defense attorney had several other options available in lieu of a motion for a mistrial. He might have sought a recess at the trial to interview the witnesses, coupled with an order from the court compelling them to talk, *see U.S. v. Cook, supra,* at 1181; *U.S. v. Munsey,* 457 F Supp 1 (ED Tenn 1978), have made a motion to interview, *Mota v. Buchanan,* 26 Ariz App 246, 547 P2d 517 (1976), or sought an injunction that the store employes refrain from not cooperating with the defense. *Coppolino v. Helpern,* 266 F Supp 930, 936 (SDNY 1967).

"A    [By Employe] Yes.

"Q    What did you tell him?

"A    I said, 'No, I won't talk about it until the trial.'

"Q    Did somebody tell you to say that?

"A    No.

"Q    That was just your idea?

"A    Yeah.

"Q    Mr. Ortner never mentioned that to you?

"A    (No audible response.)

"Q    It's not a store policy or anything like that?

"A    No. They said that it would be better if we didn't say anything, but I wouldn't have anyway.

"Q    Who said that?

"A    The DA.

"Q    [A deputy district attorney] told you that?

"A    Yeah, he said specifically we had our choice whether or not we wanted to. And I chose not to.

"Q    But he said it was better if you didn't say anything?

"A    No, he didn't. He said — he said —

"Q    Go ahead.

"A    He said it was our choice whether we wanted to or didn't want to, and it was up to us.

"Q    You just said, though, that he said it would be better if you didn't. I think the way you related it before was he said it was your decision on whether or not you could say something or not, but that it would be better if you didn't. Is that what you said just now on on the stand?

"A    (No audible response.)

"[By Defense Attorney]:   Perhaps we can ask the Court Reporter to read it.

"(Whereupon the witness' answer was read back by the court reporter.)

"Q    [By Defense Attorney] My question is: You said 'they' said that, meaning somebody from the District Attorney's Office said it would be better if you didn't say anything. We're just trying to find out if that's what they said. Who was the 'they'?

"A    [By Employe Uh-huh, they said that. The DA's Office, [a deputy district attorney] — they told us. The DA's Office, * * *, who we had contact with. He said that it was our choice whether or not we wanted to say anything, that if we said anything, it can be used for us or against us at — it's better off if we don't say anything until the trial, and then we talk about it then. And then it will come up then."

The defense immediately moved for a mistrial. The motion was denied. The defense also filed a motion for reconsideration, which was taken up at the time for sentencing. At that time the deputy district attorney who had prosecuted the case took the stand and testified he had told the two witnesses it was their choice whether to talk to attorneys for either side and that he could not and would not tell them not to talk to the defense. He denied telling the witnesses it would be better not to do so. The trial court made the following finding:

> "* * * The Court finds based on this record — and I am not now trying to say verbatim what was said — but the Court finds that the prosecutor did state to two prosecution witnesses that they might be contacted by defense counsel or representatives of defense counsel; that he told them that he was not telling them that they should not talk to the person, but that he did tell them that if they were interviewed, that their interview would either be taped or otherwise recorded and that their statements could be used against them at trial and that *it would be better* if they didn't say anything.
>
> "Based on this entire record, the Court does not feel under these circumstances that that constitutes misconduct in this case and does not find that there is a basis for a mistrial and continues its decision as before. Therefore, the motion for reconsideration is denied." (Emphasis added.)

■■ Advising a witness of his right to refuse to submit to pre-trial questioning by defense attorneys does not deny the defendant a fair trial. *U.S. v. Matlock,* 491 F2d 504, 506 (6th Cir 1974), *cert den* 419 US 864 (1974); *U. S. v. Bowens,* 318 F2d 828, 829 (7th Cir 1963), *cert den* 375 US 911 (1963). Reversal is justified only when there is a clear showing that the government instructed the witness not to cooperate with the defense. *U.S. v. White,* 454 F2d 435 (7th Cir 1971), *cert den* 406 US 962 (1972), or when specific prejudice can be shown to have resulted from the prosecutor's advice. *U.S. v. Cook,* 608 F2d 1175, 1182 (9th Cir 1979), *cert den* 100 S Ct 706 (Jan. 14, 1980); *U.S. v. Scott,* 518 F2d 261, 268 (6th Cir 1975).[2] The court found the prosecutor did not

---

[2] Defendant relies primarily on the case of *Gregory v. United States,* 369 F2d 185 (DC Cir 1966), *cert den* 396 US 865 (1969), to urge that reversal of a conviction is warranted when a prosecutor advises witnesses not to speak with

instruct the witnesses *not* to talk with representatives of the defense. The state's witnesses testified they were told it was their choice whether to talk to attorneys. The store manager testified he refused to discuss the matter before trial as a matter of "store policy" not because of the prosecutor's advice; his employe, the victim of the assault, testified he would not have talked to the defense anyway. A private store policy of not speaking to defense investigators could not be challenged as a denial of defendant's constitutional rights. *See U.S. v. McDougald,* 350 A2d 375 (DC App 1975).

■ ■ Though we may not approve of the conduct of the prosecutor, there is no ground for reversal of defendant's conviction in the absence of a showing of an instruction not to cooperate with the defense which in fact resulted in a refusal to cooperate. The law is well-established that while a defense attorney has the right to interview or attempt to interview any witness he or she desires, the witness has the right to refuse to be interviewed unless under order of the court to answer. *U.S. v. Long,* 449 F2d 288, 295-6, (8th Cir 1971), *cert den* 405 US 974 (1972); *Byrnes v. U.S.,* 327 F2d 825, 832 (9th Cir 1969), *cert den* 377 US 970 (1964); *U.S. v. Hubbard,* 474 F Supp 64 (DC Cir 1979); *U.S. ex rel Trantino v. Hatrack,* 408 F Supp 476 (DNJ 1976), *reversed in part on other ground* 563 F2d 86 (3rd Cir 1977), *cert den* 435 US 928 (1978).

Affirmed.

---

anyone unless he is present. In *Gregory,* however, the court found the right to "an equal opportunity to interview witnesses," to be based on two things: elementary concepts of fairness and due process and on a federal statute, 18 USCA 3432, providing that the defendant in capital cases be furnished with a list of names and addresses of witnesses. 369 F2d at 188. *Gregory* is not applicable here.

18 USCA 3432 provides:

"A person charged with treason or other capital offense shall at least three entire days before commencement of trial be furnished with a copy of the indictment and a list of the venireman, and of the witnesses to be produced at the trial for proving the indictment, stating the place of abode of each venireman and witness."