Argued and submitted June 3, affirmed September 9, 1981

# STATE OF OREGON,
*Respondent,*
*v.*
# ROSIE LEE YORK,
*Petitioner.*

(No. C80-02-30569, CA 17779, SC 27711)

632 P2d 1261

Lawrence Matasar, Metropolitan Public Defender, Portland, argued the cause and filed a brief for petitioner.

James C. Rhodes, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Denecke, Chief Justice, and Tongue, Lent, Linde, Peterson, and Tanzer, Justices.

PETERSON, J.

Tanzer, J., specially concurring.

## PETERSON, J.

Defendant appeals her conviction of theft and assault arising from a shoplifting incident after which she stabbed a store employee who confronted her. The case was tried to the court without a jury. She assigns as error the denial of her motion for mistrial based on claimed misconduct of the prosecutor in advising prospective witnesses that "it would be better if we didn't say anything" to the defense. The Court of Appeals did not express approval of the prosecutor's advice, but affirmed the conviction.[1]

The state called the store manager and the assault victim as witnesses. The manager testified that he refused to discuss the case with defense investigators before trial because it was "against store policy" to do so. The victim testified:

"Q [By defense attorney] Did somebody call you on the telephone, say that he was an investigator from the Public Defender's Office, that he represented a Ms. Rosie York and that he wanted to talk about this case with you?

"A [By Employe] Yes.

"Q What did you tell him?

"A I said, 'No, I won't talk about it until the trial.'

"Q Did somebody tell you to say that?

"A No.

"Q That was just your idea?

"A Yeah.

"Q Mr. Ortner never mentioned that to you?

"A (No audible response.)

"Q It's not a store policy or anything like that?

"A No. They said it would be better if we didn't say anything, but *I wouldn't have anyway.*

"Q Who said that?

"A The DA.

"Q [A deputy district attorney] told you that?

---

[1] The Court of Appeals stated:

"Though we may not approve of the conduct of the prosecutor, there is no ground for reversal of defendant's conviction in the absence of a showing of an instruction not to cooperate with the defense which in fact resulted in a refusal to cooperate." 51 Or App at 160.

We read the Court of Appeals opinion as holding that, even though the conduct may have been improper, there was no prejudice to the defendant.

"A   Yeah, he said specifically we had our choice whether or not we wanted to. And I chose not to.

"Q   But he said it was better if you didn't say anything?

"A   No, he didn't. He said — he said —

"Q   Go ahead.

"A   He said it was our choice whether we wanted to or didn't want to, and it was up to us.

"\* \* \* \* \*.

"Q   [By Defense Attorney] My question is: You said 'they' said that, meaning somebody from the District Attorney's Office said it would be better if you didn't say anything. We're just trying to find out if that's what they said. Who was the 'they'?

"A   [By Employe] Uh-huh, they said that. The DA's Office, [a deputy district attorney] — they told us. The DA's Office, \* \* \*, who we had contact with. He said that it was our choice whether or not we wanted to say anything, that if we said anything, it can be used for us or against us at — it's better off if we don't say anything until the trial, and then we talk about it then. And then it will come up then." (Emphasis added.)

Defendant's motion for mistrial was denied. Upon a motion for reconsideration, the prosecutor testified that he had told the two witnesses it was their choice whether to talk to attorneys for either side. He further testified that he could not and would not tell them not to talk to the defense. He denied telling the witnesses it would be better not to do so. The trial court nevertheless found:

"\* \* \* The Court finds based on this record—and I am not now trying to say verbatim what was said—but the Court finds that the prosecutor did state to two prosecution witnesses that they might be contacted by defense counsel or representatives of defense counsel; that he told them that he was not telling them that they should not talk to the person, but that *he did tell them* that if they were interviewed, that their interview would either be taped or otherwise recorded and that their statements could be used against them at trial and *that it would be better if they didn't say anything.*

"Based on this entire record, the Court does not feel under these circumstances that that constitutes misconduct in this case and does not find that there is a basis for a mistrial and continues its decision as before. Therefore,

the motion for reconsideration is denied." (Emphasis added.)

The finding of fact is binding on appeal. The conclusion that the prosecutor's act was not "misconduct" is a decision of law which is subject to appellate scrutiny. We allowed review to consider two questions: first, whether it is improper for a prosecutor to encourage a witness to refuse requests for interviews or information from the defense, and second, if this is improper, what remedies are available to the defendant.

## I

### It is improper for a prosecutor to instruct prospective witnesses that they should not talk to the defense

A district attorney's duty to prosecute persons charged with crime does not authorize the prosecutor to frustrate, by *improper* means, the *legitimate* efforts of the defense to defend the case. Clearly, efforts of the defense to interview prospective witnesses are legitimate activities of a defense attorney.[2] The pivotal question, and the principal issue in this case, is whether it is improper for a prosecutor to impede defense efforts to interview prospective witnesses by instructing them not to talk to the defense attorney, or as in this case, by telling them (as the trial court found) "* * * that it would be better if they didn't say anything."

Although no statute or rule expressly forbids such prosecutorial conduct, we believe that both statutory law and disciplinary rules, examined collectively, leave little doubt of this state's policy toward the principle of non-interference with defendant's access to witnesses. ORS 135.815(1) requires the district attorney, prior to trial, to disclose to the defendant materials of various kinds, including "[t]he names and addresses of persons whom he intends to call as witnesses at any state [sic] of the trial." The section continues by requiring the district attorney to disclose the written or recorded statements of such witnesses or memoranda of their oral statements. ORS 135.815(2). It

---

[2] The thoroughness of the defense attorney's investigation, including contacting prospective witnesses, may determine the success of the defense effort. *See* ABA Standards for Criminal Justice at 4.53-55, and Oregon Criminal Law Handbook § 1.5 (1969).

hardly is consistent with the policy of this section to require the prosecutor to disclose to the defense the "names and addresses" of witnesses, on the one hand, and on the other, to authorize the prosecutor to encourage the witnesses not to be interviewed concerning legitimate defense questions bearing on the alleged crime.

Section DR 7-103(B) of Oregon's Code of Professional Responsibility is addressed specifically to prosecutors and requires a prosecutor to "make timely disclosure" to the defense of the existence of any exculpatory evidence. DR 7-109, more generally, forbids any lawyer either to suppress any evidence that either he or his client (in this case, the government) is obliged to reveal or produce, or to "advise or cause a person to secrete himself * * * for the purpose of making him unavailable as a witness."[3] A parallel policy not limited to litigation finds expression in DR 7-102(A)(3).[4]

■ We do not imply that the prosecutor in this case violated one of these disciplinary rules. If the issue were professional discipline, the rules would not apply beyond their terms, whatever the underlying policy. *See In re Ainsworth,* 289 Or 479, 493, 614 P2d 1127 (1980). But this perspective, appropriate when a professional license or reputation is at stake, does not mean that the rules have no underlying policy. Implicit in the rules, as in ORS 135.815, plainly is a policy favorable to access to witnesses and evidence and hostile to improper adversarial interference with such access. In the context of a criminal prosecution, this principle denies the state the right to discourage witnesses from telling the defense what they know.

---

[3] DR 7-109:

"(A) A lawyer shall not suppress any evidence that he or his client has a legal obligation to reveal or produce.

"(B) A lawyer shall not advise or cause a person to secrete himself or to leave the jurisdiction of a tribunal for the purpose of making him unavailable as a witness therein."

"* * * * *"

[4] DR 7-102(A)(3):

"In his representation of a client, a lawyer shall not: "* * * (3) conceal or knowingly fail to disclose that which he is required by law to reveal."

■ We are mindful that some witnesses may decline to be interviewed by the defense. We do not hold that witnesses may be compelled to speak with the defense counsel prior to trial. *Compare United States v. Long,* 449 F2d 288, 295-296 (8th Cir 1971), *cert den* 405 US 974 (1972). We do not hold that the prosecutor must encourage witnesses to consent to being interviewed by defense counsel, or that it is improper for a prosecutor to advise prospective witnesses of their right to refuse to submit to a pre-trial interview by the defense. *Compare, United States v. White,* 454 F2d 435, 439 (7th Cir 1971), *cert den* 406 US 962 (1972). We hold that a prosecutor should not improperly interfere with the effort by the defense to interview prospective witnesses by instructing them not to talk to the defense attorney or by telling them that "it would be better if they didn't say anything."

Criminal trials should be conducted fairly. Although the system may not always guarantee equal access to relevant evidence, our system certainly should not put a premium upon prosecutorial suppression of access to relevant evidence. The secretion of witnesses is expressly prohibited by DR 7-109, and ORS 135.815 suggests the conclusion that the district attorney not frustrate the defense in the preparation of its case by preventing interview of important witnesses by the attorney for the defendant.

The following statement of the Supreme Court of Pennsylvania, made in a case in which the witness was willing to be interviewed, but only if the district attorney consented, is in point:

"We are aware of no authority in the law which gives the district attorney the right, *in general,* to deny defense counsel access to the Commonwealth's witnesses. Under the ethical standards of our profession, in the absence of special circumstances to which we hereinafter allude, the consent of the district attorney should not be necessary to insure defense counsel's right to interview a witness prior to the trial. The primary duty of a district attorney is not to convict, but to see that justice is done. [Citing DR 7-103(B), DR 7-109(A) and (B).]

"* * * * *.

"It has been vigorously urged that there is a substantial difference between affirmatively ordering a witness not to

talk with defense counsel, and merely advising the witness that the prosecution does not consent to the interview. We are not persuaded. In the majority of instances, as in the case at bar, the effect of the prosecutor's expressed disapproval would be to prevent defense counsel from speaking with the witness until the witness testifies at trial. This result is unsatisfactory. We are concerned with the interference by a district attorney with the *right* of a defendant to interview an otherwise willing witness. The issue is not the form which that interference takes, but rather whether it is effective. A district attorney who wishes to bar such an interview may employ one of three methods: he may hide or incarcerate the witness; he may order the witness not to speak; or he may 'advise' the witness not to speak. The district attorney certainly has not adopted either of the first two methods. His choice of the third method, even though exercised in good faith, nevertheless was in error.

"We are of the view that, *in the absence of an affirmative and convincing showing of exceptional circumstances or compelling reasons,* a district attorney may not interfere with the pre-trial interrogation by a defense counsel of persons who may be called upon as witnesses in the case.* * * Unquestionably, we cannot force a district attorney to approve of such questioning; however, we may certainly bar him from communicating his disapproval to the witness. We are not hereby saying that witnesses themselves may be compelled to speak with defense counsel prior to trial. We merely intend to prevent the prosecuting attorney from interfering with this aspect of the defendant's preparation for trial." (Emphasis theirs; footnote omitted.) *Lewis v. Court of Common Pleas of Lebanon County,* 436 Pa 296, 260 A2d 184, 188-189 (1969).[5]

The state characterizes the defendant's position as a request that this court declare, "* * * on constitutional grounds, that *all* criminal defendants be able to interview *all* the state's witnesses in every case." Our holding is not based upon constitutional grounds, nor do we hold that the

---

[5] The quoted material makes reference to "exceptional circumstances" in which the rule would not apply. Situations may arise in which the district attorney can show "exceptional circumstances or compelling reasons" why the defendant's attorney should not be permitted to interview or contact a prospective witness. Aside from the fact that this is not such a case, it is probable that the district attorney, with appropriate assistance from the trial court, as needed, can fashion an appropriate remedy in such cases. *Compare,* J. Collins, *Discovery in Criminal Cases,* contained in The Prosecutor's Sourcebook, Vol 1, at 377, 383-384 (B. George & I. Cohen ed 1969).

witnesses whom the prosecutor intends to call must be made available for all criminal defendants to interview. As stated above, we only hold that the state cannot order or advise a witness not to speak to the defense attorneys.[6]

## II
### The defendant was not prejudiced

Having determined that it is improper for a prosecutor to instruct a witness not to be interviewed by the defense, we consider whether the case must be reversed for violation of that rule. When access to witnesses is impaired by prosecutorial misconduct, the defendant must first take appropriate action to overcome the obstacle sought to be imposed by the prosecutor, if the opportunity exists. For example, if prior to trial the defense attorney becomes aware of improper prosecutorial efforts to prevent interviewing of witnesses, assistance of the court could be requested. Upon discovery of improper prosecutorial conduct which may impede the defendant's trial preparations or presentation of evidence, if opportunity exists to invoke a remedy which may eradicate the possible prejudice, the defendant must timely act by taking appropriate steps to attempt to cure the problem. Defense attorneys cannot sit on their hands, doing nothing, and later complain of the prosecutor's misconduct.

In an appropriate case, a recess or postponement might be the proper remedy. *See United States v. Cook.* 608 F2d 1175, 1181 (9th Cir 1979), *cert den,* 444 US 1034 (1980). Other courts have granted motions to interview, *Mota v. Buchanan,* 26 Ariz App 246, 547 P2d 517 (1976), or granted an injunction enjoining the type of conduct here involved. *Coppolino v. Helpern,* 266 F Supp 930, 936 (SD NY 1967).

---

[6] We see no necessity for otherwise extending the discussion on this issue, other than to point out that this holding is consistent with Standard 3-3.1(c) of the ABA Standards for Criminal Justice (1980). It reads:

"(c) A prosecutor should not discourage or obstruct communication between prospective witnesses and defense counsel. It is unprofessional conduct for the prosecutor to advise any person or cause any person to be advised to decline to give to the defense information which such person has the right to give."

A collection of cases, pro and con, may be found at 90 ALR 3d 1231 (1979). We note that the plaintiff has not cited, and we have found no cases approving the type of prosecutorial conduct here involved.

In *Lewis v. Court of Common Pleas of Lebanon County,* 436 Pa 296, 260 A2d 184, 186 (1969), the trial court, upon the defendant's motion, ordered " "* * * that the District Attorney is enjoined not to prohibit [the witness] from discussing the testimony and the evidence with counsel for the defendant. * * *" Upon appropriate motion, a trial court might order a prosecutor to withdraw the instructions to the witness. We also take note of ORS 136.080-136.100, which provide for depositions of witnesses as a discretionary condition of requested postponement.[7] Here, none of these steps were taken or requested.

■    Both the store manager and the victim testified that they would not have talked to the defendant's representatives, in any event. At the post-trial hearing on the defendant's motion for reconsideration, the trial judge opined that a postponement or recess would have been of no avail to the defense, observing that the witnesses had "strong ideas about the case" and felt "very strongly with respect to this defendant." The defendant has not pointed us to any evidence that the misconduct had any effect upon the outcome of the case or interfered with her preparation for trial or presentation of a defense. We find nothing in the record which leads us to believe that the prosecutor's misconduct deprived her of a fair trial. We therefore affirm. Or Const, Art VII (Amended), § 3; ORS 138.230.[8]

---

[7] In citing such cases, we note that procedural statutes vary from jurisdiction to jurisdiction. Procedures invoked in other jurisdictions are not necessarily appropriate under Oregon practice rules.

[8] ORS 138.230 provides:

"After hearing the appeal, the court shall give judgment, without regard to the decision of questions which were in the discretion of the court below or to technical errors, defects or exceptions which do not affect the substantial rights of the parties."

Defendant cites *Chapman v. California,* 386 US 18, 24, 87 S Ct 824, 17 L Ed 2d 705 (1967), for the proposition that the state, as the beneficiary of a constitutional error, must "* * * prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Our holding is not based upon any "constitutional error." Even applying the *Chapman* standard upon which the defendant relies, we are satisfied, beyond any reasonable doubt, that the error complained of did not contribute to the guilty finding.

**TANZER, J.,** specially concurring.

I would prefer to join the majority opinion because I would not wish to imply judicial approval of the prosecutorial conduct which the trial court found to have occurred. Unless we are rulemaking, however, our approval or disapproval does not have the force of law which requires trial court action. I cannot join the majority because it has divined a new rule from law that does not support that rule. Neither the majority nor the defendant has offered a source of law which implies that the trial court erred, and I will review each of their theories in turn.

### I. Ethics

Defendant first argues that the prosecutor's acts were unethical. She cites us to the American Bar Association Standards of Criminal Justice which suggest that such advice is improper. Section 3.1(c) provides:

> "A prosecutor should not obstruct communications between prospective witnesses and defense counsel. It is unprofessional conduct to advise any person to decline to give information to the defense."

She also refers us to the newly published ABA Discussion Draft of the Model Rules of Professional Conduct which also would bar such conduct. Section 3.10(e) provides:

> "The prosecutor in a criminal case shall not discourage a person from giving relevant information to the defense."[1]

The question, however, is not one of propriety; it is one of law. The recommendations of these ABA studies may influence future modifications of the Rules of Professional Conduct promulgated by this court to regulate the ethics of the practice of law, but they have no controlling effect in Oregon either as ethical standards or as authoritative rules of law. Even were the court inclined to enforce an ethical standard as we would a rule of constitutional law, *cf. State v. Jones,* 279 Or 55, 60, 566 P2d 867 (1977), there is no enforceable ethical standard violated by the prosecutor's conduct in this case.

---

[1] This provision does not appear as a part of a rule in the Proposed Final Draft of May 30, 1981. There are comments to Rule 3.8 which convey similar content. *Ibid.* at 157.

The majority relies on certain sections of Oregon's Code of Professional Responsibility, but then acknowledges that the sections do not bar the conduct in this case:

> "We do not imply that the prosecutor in this case violated one of these disciplinary rules. * * *"

A lawyer preparing for trial has little reason to anticipate that his non-violation of a non-applicable disciplinary rule will later be deemed "improper" and thus trigger a mistrial. Nor should a trial court be expected to anticipate that an appellate court which has not exercised its authority to determine such conduct to be unethical and bar it by promulgation of disciplinary rules, will so rule spontaneously in the ad hoc review of a criminal conviction. I conclude that the non-violation of our non-applicable disciplinary rules gives no basis for the majority holding.

### II. Statutes

The majority also cites ORS 135.815, one of the criminal procedure discovery statutes. There is no suggestion that the prosecutor failed in any way to fully comply with statutory requirements for discovery. Rather, the majority, looking to the statute and the disciplinary rules, all of which were complied with, finds what it calls a "policy" which forbids far more than the words of those laws forbid.

There are two problems with reliance upon this newly discovered policy. First, it is bald judicial legislation masquerading as enforcement of policies. If there is to be such a policy, the legislature should enact it or we should promulgate it by rule.

Second, the unstated implications are enormous and unacceptable. The disciplinary rules upon which the majority relies (except for DR 7-103(b) which merely codifies *Brady v. Maryland*, 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963)), are applicable to all lawyers. The civil litigation counterparts to the criminal discovery statutes, ORCP 36 through 46, contain far more stringent discovery require ments than exist on the criminal side. Thus, the "policy" which the majority has discovered in the criminal statute must be implied even more forcefully in the civil procedure rules. Yet, I doubt that the majority would

approve a mistrial in a civil case if it is discovered that an attorney advised a potential witness that he ought not to talk to the other side except as required under discovery procedures. This observation is not intended to alarm civil practitioners—rather, I wish only to demonstrate the lack of substance in the majority's rationale.

### III. The Constitution

Defendant contends that the prosecutor's action went beyond mere impropriety. She makes no assertion that the discovery statutes were not fully complied with. Rather, she contends that the action was a breach of constitutional law, thus raising issues which the majority did not reach. First, she asserts that it violated her right to the assistance of counsel assured by the 6th amendment to the United States Constitution and her right to be heard by counsel assured by Article I, Section 11, of the Oregon Constitution. She cites *Powell v. Alabama,* 287 US 45, 53 S Ct 55, 77 LEd 158 (1932), for the proposition that the right to counsel extends to the pretrial stage of the prosecution so that counsel may investigate and prepare for trial. In *Powell,* counsel was not appointed until the morning of trial. The simple answer to this contention is that defendant was provided with counsel at the inception of the prosecution. Defendant argues, however, that the prosecution cannot frustrate defendant's attorney's investigation by discouraging its witnesses from being interviewed by defendant's lawyer or investigators. It is true that the state, consistent with due process, must disclose exculpatory evidence during the course of a prosecution, *Brady v. Maryland, supra,* and if the state statutorily requires the defense to provide discovery, it must reciprocate, *Wardius v. Oregon,* 412 US 470, 93 S Ct 2208, 37 LEd2d 82 (1973). Even these rights, however, are unrelated to the right of counsel because they exist regardless of whether a defendant is represented by counsel. Defendant has cited no persuasive case or principle of law which applies the constitutional right of counsel to prohibit the prosecution from restricting pretrial access to witnesses it expects to call and I am aware of none.[2]

---

[2] *See* cases collected at Annot., Interference With Interrogation of Witnesses, 90 ALR3d 1231.

Defendant also argues from *Wardius* that the prosecutor's act deprived defendant of a proper "balance of forces between the accused and his accuser" as required by due process. 412 US at 474. I doubt that the phrase was intended as broadly as defendant suggests. Trial must be a fair fight, or at least one fought according to rules of law, but not necessarily an even fight. Defendant is entitled to the full benefit of her rights regardless of the balance of power. The question here is not one of balance, but one of definition of the defendant's rights as they may be affected by the prosecutor's act.

Defendant also contends that the prosecutor's conduct abridged her right under the same constitutional provisions to confrontation and to meet the witnesses against her face to face. We have consistently held that the constitutional right to confrontation is essentially a right to cross-examine the witnesses at trial and to allow jury evaluation of their credibility. *State v. Smyth,* 286 Or 293, 593 P2d 1166 (1979). The United States Supreme Court also has held that "The right to confrontation is basically a trial right. It includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness." *Barber v. Page,* 390 US 719, 725, 88 S Ct 1318, 20 LEd2d 255 (1968). These cases applying the right of confrontation at trial do not necessarily restrict the scope of the right, but this is not a case of pretrial adversarial confrontation such as would justify extending the right to the pre-trial stage, *see, e.g., United States v. Wade,* 388 US 218, 87 S Ct 1926, 18 LEd2d 1149 (1967). We have held that the state need not provide a preliminary hearing for the purpose of discovery, *State v. Stanford,* 245 Or 397, 421 P2d 988 (1966), *cf. State v. Clark,* 291 Or 231, 630 P2d 810 (1981), and I see no basis in the right to confrontation to require informal access to state's witnesses.

Finally, defendant argues that the prosecutor's act deprived her of due process in that she was denied a fair trial. She cites *Gregory v. United States,* 369 F2d 185 (DC Cir 1966), a case much like this except that it was capital. She particularly cites this passage from the opinion:

"A criminal trial, like its civil counterpart, is a quest for truth. That quest will more often be successful if both

sides have an equal opportunity to interview the persons who have the information from which the truth may be determined. The current tendency in the criminal law is in the direction of discovery of the facts before trial and elimination of surprise at trial. A related development in the criminal law is the requirement that the prosecution not frustrate the defense in the preparation of its case. Information favorable to the defense must be made available to the defense. *Brady v. State of Maryland,* 373 US 83, 83 S Ct 1194, 10 LEd2d 215 (1963). Reversals of convictions for suppression of such evidence, and even for mere failure to disclose, have become commonplace. It is not suggested here there was any direct suppression of evidence. But there was unquestionably a suppression of the means by which the defense could obtain evidence. The defense counsel could not know what the eye witnesses to the events in suit were to testify to or how firm they were in their testimony unless defense counsel was provided a fair opportunity for interview. In our judgment the prosecutor's advice to these eye witnesses frustrated that effort and denied appellant a fair trial." (Footnotes omitted.) 369 F2d at 188-189.

The *Gregory* application of the due process clause is not persuasively reasoned. First, the notion that a criminal trial is necessarily "a quest for truth" is more an ideal than a premise for legal reasoning. As a premise for application of the due process clause, it does not withstand even scant analysis. An innocent defendant who puts the state to its proof or attempts to prove his innocence or both, may well be said to search for truth. A defense lawyer who moves to suppress evidence, properly performs his duty to his client, but cannot be said to be questing for truth. Particularly if the defendant actually did the acts charged, his lawyer may reasonably pursue a defense strategy more advantageous to his client than truthseeking.

The *Gregory* conclusion that "the current tendency in the criminal law" to require discovery by rule and statute yields a doctrine of constitutional magnitude whereby, as a matter of due process, defense counsel must be "provided a fair opportunity for interview" of witnesses to determine prior to trial "how firm" the witness is, is also questionable. Surely due process does not impose a duty for the prosecution to provide a fair opportunity for interview

of a witness whose personal or family safety would be endangered or a sensitive witness *(e.g.,* a child or rape victim), yet the necessity for defense counsel to determine the firmness of such a witness would be just as great. Opportunity to test firmness is too weak an analytical reed upon which to create a new corollary of the constitutional right of counsel. In contrast, the United States Supreme Court has held that "There is no general constitutional right to discovery in a criminal case * * *." *Weatherford v. Bursey,* 429 US 545, 559, 97 S Ct 837, 51 LEd2d 30 (1977).[3] Contrary to *Gregory,* in the absence of special circumstances which are not presented here, due process does not require "fair opportunity for interview."[4]

In summary, I, like the Court of Appeals, should not be understood as approving or authorizing the practice by any attorney in any case of discouraging witnesses from talking to the other side. Rather, despite the valiant effort of defense counsel to provide a valid theory supporting a contrary result, I conclude that under the circumstances of this case, there is no legal prohibition against the advice of the prosecutor and no cognizable right of the defendant which was violated by it.

I concur in the portion of the majority opinion which concludes that defendant suffered no prejudice arising from the prosecutor's act.

Lent, J., joins in this specially concurring opinion.

---

[3] This citation is more apt than that to *Brady v. Maryland* in the quoted excerpt.

[4] Due process was one basis of *Gregory.* The other was an extension of the statutory requirement that the prosecution provide a list of names and addresses of witnesses. *Cf.* ORS 135.815(1). This court has declined to use its inherent power to promulgate a rule of discovery beyond that required by the discovery statutes or *Brady v. Maryland. State v. Koennecke,* 274 Or 169, 182-83, 545 P2d 127 (1976).

There are cases holding such advice to offend due process, but their reasoning is more conclusory than that in *Gregory. See* 90 ALR3d 1231, *supra,* note 1. The cases cited by the Court of Appeals to the contrary generally do not involve advice to the witnesses not to talk to the defense.