Argued and submitted January 17, peremptory writ issued February 16, 1989

STATE ex rel O'LEARY,
*Plaintiff-Relator,*

*v.*

LOWE,
*Defendant.*

(SC S35838)

769 P2d 188

Virginia L. Linder, Solicitor General, Salem, argued the cause on behalf of plaintiff-relator. With her on the petition for Alternative Writ of Mandamus were Dave Frohnmayer, Attorney General, Thomas H. Denney, Assistant Attorney General, Robert M. Atkinson, Assistant Attorney General, Janet A. Klapstein, Assistant Attorney General, and Christine Chute, Assistant Attorney General, Salem.

William T. Lyons, Oregon City, argued the cause and filed the response on behalf of the defendant.

FADELEY, J.

FADELEY, J.

This is an original mandamus proceeding. Relator O'Leary is the District Attorney of Clackamas County responsible for prosecuting four cases of manslaughter in the first degree in which it is alleged that the four criminal defendants, acting together, beat a child to death.[1] Defendant judge[2] is the Clackamas County Circuit Court judge before whom the criminal trials are pending. The dispute in this case centers on defendant judge's order directing relator to make available for interview by counsel for the criminal defendants a total of 53 children, all of whom are presently in the custody of the State of Oregon Children's Services Division (CSD) and some or all of whom may have been eyewitnesses to the child's death. We conclude that the defendant judge exceeded his authority in issuing the order and accordingly issue a peremptory writ directing that the order be withdrawn.[3]

I.

The child died on October 14, 1988. Officers investigating her death found a number of other children at the same house in which the victim apparently had suffered her fatal injuries. The children were taken into protective custody. On October 17—the next judicial day—a petition was filed in the Clackamas County Juvenile Court alleging that the children's welfare was endangered because they were being inadequately housed and because they had been subjected to systematic beatings that other children had been forced to watch. Circuit Court Judge Gilroy, sitting as the juvenile court judge, placed

---

[1] The cases are *State v. Willie K. Chambers,* Clackamas County Circuit Court No. 88-968; *State v. Constance Zipporah Jackson,* Clackamas County Circuit Court No. 88-969; *State v. Frederick Paul Doolittle,* Clackamas County Circuit Court No. 88-970; and *State v. Brian James Brinson,* Clackamas County Circuit Court No. 88-971.

[2] We shall refer to the defendant in this mandamus proceeding as the "defendant judge" in order to distinguish him from the four defendants in the underlying criminal prosecution out of which this proceeding arose. These latter four are referred to as the "criminal defendants." In keeping with the usual practice in such cases, the defendant judge is represented in this court by counsel for the four criminal defendants, who are the real parties in interest.

[3] Although all members of this Court are agreed that the defendant *judge* exceeded his authority in issuing the order, there has been some disagreement as to the rationale for that result and as to the consequences that might flow from the differing rationales. On February 8, 1989, this Court notified the defendant judge that a peremptory writ would issue, with this opinion to follow.

the children in shelter care in the temporary custody of CSD and found that there was probable cause to believe that the children were within the court's jurisdiction because their condition and circumstances endangered their welfare.

On October 20, the criminal defendants were indicted by the Clackamas County Grand Jury. Three of the children were listed as witnesses before the Grand Jury. Sometime thereafter during the discovery process, and after ten of the children were disclosed as potential prosecution witnesses, difficulties arose when counsel for the criminal defendants, armed with a claim of consent of the childrens' parents, sought to interview the 53 children but were denied the opportunity to do so by CSD. On December 2, the criminal defendants moved for the imposition of sanctions under the Oregon criminal discovery statutes, ORS 135.805 to 135.873, and under Article I, section 11, of the Oregon Constitution and the Fifth, Sixth and Fourteenth Amendments to the United States Constitution on the ground that "the State" was denying them access to the 53 children who were in the custody of CSD and who were material witnesses in the criminal case. They stated that they were being deprived of the "perceptions, observations and statements" of these "eyewitness" children which prevented adequate trial preparation.

On December 7, the defendant judge held a hearing on the motion for sanctions. After hearing the evidence, he stated:

"[A] fair reading of the discovery rights provided by Oregon Statute and the constitutional rights of the defendants to prepare a defense and to a fair trial and to the effective assistance of Counsel require that they be allowed to try to talk to witnesses without interference from the state.

*"In this case, there is no indication that anyone other than the Children's Services Division is preventing the defense from interviewing these children.* From the evidence I have heard here, it appears the State has had nearly unlimited access with the consent and assistance of the Children's Services Division to 53 potential eyewitnesses of this alleged crime, and as a result of those discussions and interviews have been able to pick and choose those which they wish to call at the trial in this matter.

"The Court believes it would be extraordinarily unjust not to allow the defense at least some opportunity to talk to those

who are willing to talk to them in order that they might also pick and choose those they wish to call. It appears from the Indictments in this case that we have four defendants who are charged with this offense. It would seem logical therefrom that who did what to who and when is going to be very critical in the trial of this case." (Emphasis supplied.)

On December 15, after making these observations, the defendant judge entered an order providing, in pertinent part:

"[T]he attorneys who are currently representing the 53 children who are in Children's Services Division custody and are potential witnesses in this case, will be appointed to represent the children for the following proceeding: the State of Oregon, through its prosecuting attorney, will produce each child separately for an interview at a location the state determines would be the least upsetting to the children. A single representative of Children's Services Division may be present as well as a single representative of the District Attorney's Office. All four defense attorneys may be present as well as a single investigator for the defense. The attorney for the child should also be present and no other person shall be present. Prior to the interview, the attorney for the child shall explain to the child the rights that the child has not to be interviewed. If the child expresses a desire not to talk at this interview, no interview will take place of that child. If at any time during the interview the child chooses not to continue talking about the subject, that right and decision will be honored and the interview will be terminated. Should Children's Services Division choose not to cooperate, the sanctions imposed by this court would be against the prosecutor and the State of Oregon in its role as prosecutor of this case."

Things did not go as the defendant judge hoped they would. On December 28, the criminal defendants filed an "Ex Parte Motion for Order to Show Cause—Contempt and for Imposition of Sanctions." The supporting affidavit of one of the criminal defendants' attorneys recited that CSD's representative refused to set up the interviews contemplated by the defendant judge's order without a specific request to do so from the relator or his deputy, and that relator's deputy told counsel that relator had asked the Attorney General to consider filing a mandamus action against defendant judge but that no such action had been filed. A different judge signed an order directed to relator and one of his deputies which ordered them to appear in court on January 3, 1989,

"to show cause, if any, why you and each of you should not be held in contempt of Court for not complying with the [provisions of the defendant judge's Order relating to arranging interviews of the 53 children] * * * and further why sanctions should not be imposed for your failure to comply with said Order."

Relator then brought the present mandamus proceeding in this Court. We stayed the show cause hearing and issued an alternative writ that alleged, in pertinent part:

## "VIII

"* * * * *

"Defendant judge's order is erroneous as a matter of law, because the circuit court has no authority to order plaintiff-relator or the Children's Services Division to produce potential state's witnesses for pretrial interview by the defense.

## "IX

"If allowed to stand, defendant judge's order will expose potential witnesses in the cases of *State v. Chambers, State v. Jackson, State v. Doolittle,* and *State v. Brinson* to pretrial proceedings which their legal custodian, the Children's Services Division, has determined to be contrary to their best interests.

## "X

"If allowed to stand, defendant judge's order will expose plaintiff-relator to the risks of being held in contempt and incurring other sanctions for failing to do something he has no power to do, to-wit: order the Children's Services Division to produce the children for interview."

The judge answered denying these three paragraphs.

## II

Both parties rely on the Oregon discovery statutes, ORS 135.805 to 135.873. Specifically, they rely on ORS 135.815, which provides, in pertinent part:

"[T]he district attorney shall disclose to the defendant the following material and information within the possession or control of the district attorney:

"(1)   The names and addresses of persons whom the district attorney intends to call as witnesses at any state of the trial, together with their relevant written or recorded statements or memoranda of any oral statements of such persons."

No one contends that the relator has failed to provide the names and addresses of the witnesses whom he intends to call as witnesses. The criminal defendants' problem is that, if they go to the addresses supplied to interview the ten witnesses named, CSD will refuse to let them talk to the witnesses. In addition, they seek interviews of the remaining eyewitnesses.

Pretrial interviews of potential witnesses by defense counsel are an appropriate and important part of preparing for trial. This court said as much in *State v. York,* 291 Or 535, 632 P2d 1261 (1981). In that case, a prosecutor had advised witnesses that "it would be better if they didn't say anything" to representatives of the criminal defendant. Although no specific prohibition of such conduct was set forth in the discovery statutes, this court held that the prosecutor's action was a violation of the policies embodied in ORS 135.815. This court explained,

> "Although no statute or rule expressly forbids such prosecutorial conduct, we believe that both statutory law and disciplinary rules, examined collectively, leave little doubt of this state's policy toward the principle of non-interference with defendant's access to witnesses. ORS 135.815(1) requires the district attorney, prior to trial, to disclose to the defendant materials of various kinds, including '[t]he names and addresses of persons whom he intends to call as witnesses at any state [sic] of the trial.' The section continues by requiring the district attorney to disclose the written or recorded statements of such witnesses or memoranda of their oral statements. ORS 135.815(2). It hardly is consistent with the policy of this section to require the prosecutor to disclose to the defense the 'names and addresses' of witnesses, on the one hand, and on the other, to authorize the prosecutor to encourage the witnesses not to be interviewed concerning legitimate defense questions bearing on the alleged crime."

291 Or at 539-40. However, *York* does not stand for the proposition that there exists any authority in the discovery statutes for a court to order either party to a criminal prosecution to make its witnesses available for *pretrial* interview by the other party. There is no statutory right in Oregon for a criminal defendant to depose a potential state's witness. Nor has any basis been shown to us that the prosecutor individually has any legal authority to require CSD to produce the children for out-of-court interviews. *York* was a case of a prosecutor acting indirectly to defeat what the law required him to do directly. It

neither negates nor supplies authority in the context of this case.

The present situation is not the same. Here, the relator—the party to whom ORS 135.815 is directed—has obeyed the statutory command and, the judge found, is doing nothing himself to interfere with full use by the defense of the information supplied. It is true that, in the larger sense, the "State" of which relator is a part is interfering with access to potential witnesses, but the discovery statutes do not purport to direct the actions of all the minions of the government.[4]

Counsel for criminal defendants and the defendant judge have seized on language in the following additional cases, but have overlooked their holdings. In *State ex rel Roach v. Roth,* 293 Or 636, 641, 652 P2d 779 (1982), this court held that a circuit court lacked authority in a criminal case to order CSD to make an alleged victim in its custody available for interview. In *State ex rel Roach v. Olsen,* 295 Or 107, 110-11, 663 P2d 767 (1983), this court later held, on identical facts, that ORS 1.010(5) did not give the circuit court that authority. In *State ex rel Upham v. Bonebrake,* 303 Or 361, 367, 736 P2d 1020 (1978), this court held that a trial judge lacked the power to compel a district attorney to make the nonparty mother produce the complaining child witness for a pretrial interview. None of these cases holds that a district attorney individually has the power to comply with an order such as the one involved in this case or that there is any absolute right to pretrial interviews in criminal cases. Neither have we been directed to any other source of law that would permit the district attorney to accomplish what the defendant judge directed.

The defendants argue that an order like the present one was contemplated in our opinion in *State v. Mai,* 294 Or 269, 656 P2d 315 (1982). It was not. *Mai* was a case in which

---

[4] We do not imply that ORS 135.815 might not be circumvented by conduct outside its precise terms (*e.g.,* by deliberate failure to record or make memoranda of the statements of witnesses which, if in writing, would have to be disclosed) in ways that might call for the consequences contemplated by the legislature.

*See also* Annot., 90 ALR3d 1231 (1979) ("Interference by Prosecution With Defense Counsel's Pretrial Interrogation of Witness"); Annot., 14 ALR3d 652 (1967) ("Accused's Right to Interview Witness Held in Public Custody").

there *had been* a violation of the discovery statutes—in that case, by the defense.[5]

In addition to their statutory arguments, the criminal defendants argue that the defendant judge had the power under Article I, section 11, of the Oregon Constitution[6] and the Sixth and Fourteenth Amendments to the United States Constitution to order the prosecution to produce these children so that the defense could attempt to interview them. Because these claims are made pretrial, about pretrial opportunities, they seem abstract. Whether the denial has any effect on the trial is not yet known. These constitutional claims go beyond any holding in our state and federal cases cited by counsel for the defendant judge or other such cases we have reviewed.

To buttress their claims under Article I, section 11, the criminal defendants point to this court's statement in *State ex rel Upham v. Bonebrake, supra,* 303 Or at 366, that "[e]xercise of the right to compulsory process may require that the state not impede defense counsel's access to prosecution witnesses for the purposes of pretrial interviews." Immediately after making that statement, however, we specifically held that Article I, section 11, does not "require that the district attorney affirmatively assist the defense by ordering the witness to be present for a pretrial interview, nor does it vest in the district attorney the power to do so." *Id.*

Neither does the federal constitution aid these criminal defendants. They cite *Pennsylvania v. Ritchie,* 480 US 39, 107 S Ct 989, 94 L Ed 2d 40 (1987), and *Brady v. Maryland,*

---

[5] Further off point, in *State v. Warren,* 304 Or 428, 746 P2d 711 (1987), this court held that CSD files are discoverable by means of *in camera* inspection by the trial court. The holding relies in part on ORS 418.770, which obligates CSD to make its records available to the prosecutor.

Additionally, ORS 418.770(2) provides, in part, that CSD may disclose its reports and records to "any person * * * court [or] * * * agency * * * when the division determines that such disclosure is necessary to * * * investigate [or] prevent * * * child abuse * * *." *See State v. Graville,* 304 Or 424, 746 P2d 715 (1987); ORS 135.970(2).

A related scenario allegedly is presented in *State ex rel Upham v. Campbell,* case number SC S35793, a case in which this court has issued an alternative writ of mandamus.

[6] Article I, section 11, of the Oregon Constitution provides in pertinent part:

"In all criminal prosecutions, the accused shall have the right to * * * compulsory process for witnesses in his favor * * *."

373 US 83, 87, 83 S Ct 1194, 10 L Ed 2d 215 (1963), but those cases stand for the proposition that the prosecution must disclose to the defense any evidence of which the prosecution is aware that is either exculpatory or impeaching of that state's case. In fact, the Court in *Ritchie* quoted with approval, at 107 S Ct at 1003, the statement from *Weatherford v. Bursey*, 429 US 545, 559, 51 L Ed 2d 30, 42, 97 S Ct 837 (1977), that:

" 'There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one.' "[7]

We hold that the record before the defendant judge did not provide any basis in statutory, constitutional or decisional law for his order directing the relator to produce each of the 53 children for an interview by representatives of the criminal defendants. The order was not authorized by law and therefore was improper.

Peremptory writ issued.

---

[7] In camera review by the trial court of the files of an agency like CSD on the question of evidence material to guilt or punishment is endorsed by *Pennsylvania v. Ritchie*, 480 US 39, 107 S Ct 989, 94 L Ed 2d 40 (1987). That case expressly recognizes that all 50 states have statutory confidentiality protections to further each state's compelling interest. See ORS 135.873, remembering that here the trial judge ruled CSD was a nonparty. Cf. *U.S. v. Valenzuela-Bernal*, 458 US 858, 867, S Ct 3440, 73 L Ed 2d 1193; 1202 (1982) (stating that movant "must at least make some plausible showing of how their testimony would have been both material and favorable to his defense"). Compare *U.S. v. Bagley*, 473 US 667, 682, 105 S Ct 3375, 87 L Ed 2d 481 (1985) (stating that failure to disclose impeachment evidence is error only if a reasonable probability it would have changed the outcome) with *U.S. v. Augurs*, 427 US 97, 111, 96 S Ct 2392, 49 L Ed 2d 342 (1976) (describing a duty to volunteer exculpatory material in federal prosecutions), and with *Valenzuela-Bernal, supra.* No issue is raised in the instant case concerning failure to disclose files or inadequacy of the files.